Andres FLORES–MIRAMONTES,
Petitioner,

v,

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–70924.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2000

Filed May 9, 2000

Peter Camp, Esq., Everett, Washington, for the petitioner.

Mary Jane Candaux, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: REINHARDT, THOMPSON, T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

To decide this petition we must first determine the extent to which recent immigration statutes limit the jurisdiction of federal courts to consider challenges to removal orders brought by aliens who are removable because they committed certain criminal offenses. We hold that jurisdiction by way of petition for review of removal orders no longer exists, but that habeas jurisdiction remains. In doing so, we follow the Third Circuit's decision in *Liang v. INS*, 206 F.3d 308 (3d Cir.2000) and the principles we laid down in *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999). Accordingly, we dismiss the petition before us for lack of jurisdiction without prejudice to the filing of a habeas petition raising the same claims.

I.

Petitioner Andres Flores–Miramontes, a Mexican native and citizen, emigrated to the U.S. in 1978 at the age of ten, at which time he was granted legal permanent resident status. In June 1996 he pled guilty, in California, to sale or transportation of cocaine. Upon returning from a visit to Mexico in November 1997, Flores–Miramontes was taken into custody by the INS at San Ysidro because of this conviction. On November 13, 1997, the INS charged him with inadmissibility to the United States on the ground that he was an immigrant who had been involved in illicit drug trafficking, pursuant to 8 U.S.C. § 1182(a)(2)(c) (INA § 212(a)(2)(C)). Flores–Miramontes filed a pro se application for withholding of removal and/or asylum and also requested a change of venue and continuance. At a hearing on December 22, 1997, an Immigration Judge denied all relief requested and ordered Flores–Miramontes removed to Mexico.

On January 13, 1998, while in custody, Flores–Miramontes gave his Notice of Appeal to INS officials for mailing to the Board of Immigration Appeals ("BIA").

However, the Notice was not mailed until January 21, 1998, which was the deadline date for its receipt. Consequently, the BIA received the Notice on January 23, 1998, two days late. Flores–Miramontes filed a pro se brief in support of his appeal with the BIA, but the agency summarily dismissed the appeal because the notice was untimely filed. He then filed a pro se petition for review of the BIA's decision and motion for a stay of removal with this court, arguing that the application of the BIA's filing deadline where INS authorities had themselves caused him to miss that deadline violated his due process rights and right of access to the courts. We granted the stay pending review.[1] Flores–Miramontes was not represented by counsel at his hearings, in his subsequent appeal to the BIA, or in filing his initial petition for review to this Court.[2]

## II.

■ The INS argues that this court lacks jurisdiction to hear the petition for review by virtue of 8 U.S.C. § 1252(a)(2)(C) (INA § 242(a)(2)(C)). The INS is correct, but not for the reasons it urges. The text of the provision states that:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § ] 1182(a)(2) . . .

8 U.S.C. § 1252(a)(2)(C). The section referred to in the provision, section 1182(a)(2)(C), covers trafficking in controlled substances. Flores–Miramontes had been convicted of sale or transportation of cocaine, and was subsequently ordered removed for that reason. Thus, on its face the statute appears to eliminate our jurisdiction to hear Flores–Miramontes' petition for review of the BIA's decision ordering his deportation.

■ We have found a narrow exception to this jurisdictional bar in two recent cases. Even when the jurisdictional bar relating to criminal removal orders appears to apply, we have jurisdiction to determine whether a petitioner "is an alien [removable] by reason of having been convicted of one of the enumerated offenses." *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999). Put another way we "have jurisdiction to determine whether jurisdiction exists." *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000). Here, however, Flores–Miramontes concedes that he is an alien, that he committed a trafficking crime that makes him removable under the relevant provision, and that he has been ordered removed. He argues before us only that the BIA's inflexible deadline, as applied to him, violates due process and his right of access to the courts. Under such circumstances, the bar created by § 1252(a)(2)(C) applies.

■ Although the INS recognizes the broad preclusive language of § 1252(a)(2)(C), it argues that we nonetheless retain jurisdiction to consider "substantial constitutional" claims regarding removal orders covered by that sub-section, and therefore that we must examine the merits of Flores–Miramontes' petition in order to determine that no "substantial constitutional" violations have taken place. In support of its argument that an exception for review of potential "substantial constitutional" violations should be read into the statute, the INS cites *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).[3] *Webster* holds that,

---

1. Flores–Miramontes also moved the BIA to reconsider and/or reopen its dismissal, but that motion was denied.

2. We appointed counsel for Flores–Miramontes to pursue his claim after he filed his initial petition for review.

3. *Webster* does not speak of "substantial" constitutional claims, but rather states that a serious constitutional problem would arise if there were no judicial forum to hear "colorable" constitutional claims. *Id.* at 603, 108 S.Ct. 2047.

absent clear congressional intent, statutes should be read to allow for judicial review of constitutional claims when all avenues to the courthouse would otherwise be foreclosed. *Id.* As such, the INS's argument has merit only if there is no other judicial forum in which Flores–Miramontes can raise his claims. If he cannot raise them in any other federal court, then we must address them here in order to preserve a forum for them. If he can raise his claims elsewhere, however, we need not read an exception into the jurisdiction-stripping provision at issue. For the reasons stated below, we hold that Flores–Miramontes does have another means by which he may raise his claims in federal court: he can petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2241. Therefore, we need not read any limitations into the provision that bars our jurisdiction over petitions to review removal orders against aliens convicted of certain crimes.

### III.

We examined a similar question in *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999). In that case, we considered a petition for review brought to challenge a deportation order under Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) § 309(c)(4)(G), the provision of IIRIRA's transitional rules that is analogous to 8 U.S.C. § 1252(a)(2)(C).[4] *Magana–Pizano*, 200 F.3d at 607. We held that the new immigration law's transitional rules regarding jurisdiction repealed our jurisdiction to consider petitions for review of such orders, but did not repeal, pro tanto, the general grant of habeas jurisdic-

tion to the federal district courts found at 28 U.S.C. § 2241. *Id.* at 607, 609. We held that any limitation of the habeas corpus statute must be "by express command," and found no such command in the provisions at issue. *Id.* at 609.

In so holding, we relied on the Supreme Court's decision in *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). *Felker* concerned a statute limiting the right to file successive habeas petitions and providing specifically that the decision of a court of appeals denying leave to file such a petition could not be appealed or be the subject of a petition for certiorari or a petition for rehearing. *See* 28 U.S.C. § 2244(b)(3)(E). In spite of this apparently clear requirement that the decision of a court of appeals was not reviewable, the Supreme Court found no partial repeal of its own habeas jurisdiction under § 2241, because "[n]o provision ... mentions our authority to entertain original habeas petitions [under § 2241]." *Felker*, 518 U.S. at 660, 116 S.Ct. 2333 (emphasis added).[5] *Felker*'s requirement that there be an explicit reference to the habeas statute is particularly relevant here because, as the Fifth Circuit noted, "*Felker* was decided on June 28, 1996, three months before IIRIRA became law; its reminder that habeas repeal requires explicit language was fresh when Congress was considering the transitional and permanent provisions of IIRIRA." *Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 305 n. 21 (5th Cir.1999) (holding that IIRIRA's transition rules do not repeal in any respect general habeas jurisdiction).

---

**4.** Unlike the petition in *Magana–Pizano*, Flores–Miramontes' petition is governed by the permanent rules of IIRIRA, because immigration proceedings were initiated against Flores–Miramontes after April 1, 1997. *See Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997).

**5.** *Felker*'s rule was hardly novel. The Court relied on two venerable cases in support of its requirement that Congress had to mention the

habeas corpus statute explicitly in order to effect any repeal. *Compare Ex Parte Yerger*, 75 U.S. (8 Wall.) 85, 106, 19 L.Ed. 332 (1868) (holding that appellate jurisdiction over habeas corpus cases could not be removed by implication) *with Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) (finding no Supreme Court appellate jurisdiction over habeas cases where Congress expressly repealed it).

It is true that the preclusive language we interpreted in *Magana–Pizano* was different from, and weaker than, the language at issue here. The permanent version of the criminal removal jurisdictional bar states "notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal [for a criminal alien] ...." whereas the transitional version at issue in *Magana–Pizano* stated "there shall be no appeal permitted in the case of an alien who is [a criminal alien]...." *Compare* 8 U.S.C. § 1252(a)(2)(C) *with* IIRIRA § 309(c)(4)(G). However, this difference does not cause us to reach a result different from the one we reached in *Magana–Pizano*. First and foremost, neither statute refers to 28 U.S.C. § 2241. Both *Felker* and *Magana–Pizano* require such explicit reference before we can find a modification to, or amendment of, the general habeas statute.

■ Second, when analyzing the language at issue in *Magana–Pizano*, we relied on the decisions of the vast majority of other circuits which determined that IIRIRA did not repeal or limit existing habeas jurisdiction. *Magana–Pizano*, 200 F.3d at 608 n. 6, 609. In some of those cases, circuit courts construed IIRIRA to preserve habeas jurisdiction even though the jurisdiction-stripping provision they were interpreting, 8 U.S.C. § 1252(g), contained even stronger language barring review than the language at issue in § 1252(a)(2)(C) (the provision at issue here). *See, e.g., Sandoval v. Reno*, 166 F.3d 225, 236 (3d Cir.1999) (holding the

"notwithstanding" language of § 1252(g) insufficient under *Felker* to repeal pro tanto habeas statute); *Henderson v. INS*, 157 F.3d 106, 117, 117 n. 7 (2d Cir.1998) (same); *Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir.1998) (same).[6] In the same vein, several other circuit courts have held, in the immigration context, that Congress cannot repeal § 2241 without mentioning it explicitly, even where the statute in question eliminates the far narrower, more specific habeas jurisdiction previously provided in the predecessor immigration statute. *Bowrin v. INS*, 194 F.3d 483, 489 (4th Cir.1999) ("We believe that had Congress intended to eliminate all habeas jurisdiction under § 2241, it would have done so by using the same explicit references it used to repeal INA § 106(a)(10)."); *Pak v. Reno*, 196 F.3d 666, 673 (6th Cir.1999) ("Although AEDPA § 401(e) pointedly refers to INA § 106(a)(10), it does not refer to § 2241. Thus, despite the fact that AEDPA § 401(e) expressly repealed habeas jurisdiction under INA § 106(a)(10), absent a clear statement from Congress, we decline to interpret that provision as also repealing general habeas jurisdiction under § 2241."); *Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1145–46 (10th Cir. 1999) ("We find the lack of any mention of § 2241 habeas review in the plain language of the statute, combined with the long historical precedent surrounding habeas corpus review in immigration cases, establishes that traditional habeas review under § 2241 survived the enactment of AEDPA § 440(d) and IIRIRA § 309(c)."); *Liang,*

---

**6.** Section 1252(g) also states that "notwithstanding any other provision of law, no court shall have jurisdiction...." But, rather than limiting its reach to "any final order of removal" as § 1252(a)(2)(C) does, § 1252(g) bars jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders...." Although the Supreme Court later interpreted this provision very narrowly in a case that did not consider habeas review, *see Reno v. American–Arab Anti–Discrimination Committee*, 525

U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), at the time *Sandoval, Goncalves,* and *Henderson* were decided, both the INS and the circuit courts interpreting § 1252(g) thought it governed the cases before them. *See Sandoval,* 166 F.3d at 230 (finding that § 1252(g) applies); *Goncalves,* 144 F.3d at 118 (finding that § 1252(g) "applies to Goncalves' claims") *Henderson,* 157 F.3d at 117 n. 7 (noting broad applicability of § 1252(g)). Nonetheless, those courts found the language of § 1252(g) insufficient to modify or amend § 2241, the general habeas statute.

206 F.3d at 320 (holding that we require "an explicit reference to habeas jurisdiction or its statutory provision in order to find an express congressional intent to repeal"); *Shah v. Reno,* 184 F.3d 719, 724 (8th Cir.1999) (stating that "AEDPA rather pointedly refers only to Section 106(a)(10) of the old Act. No reference is made to the general federal habeas corpus statute, though that statute was for decades routinely used to review executive decisions in immigration matters...."). The weight of these cases, as well as the authority from the Supreme Court and this court that directly binds us, precludes our finding a limitation or partial repeal of § 2241 absent a direct reference to that statute in the provision that allegedly amends it.

Finally, we note that in other contexts we have refused to treat general "notwithstanding" language as sufficient to constitute an explicit repeal of statutes far less central to our system of justice than the habeas provision. For example, in *Northwest Forest Resource Council v. Pilchuck Audubon Society,* 97 F.3d 1161, 1167 (9th Cir.1996), we held that a statute requiring the Secretaries of Agriculture and the Interior to complete certain timber sales "notwithstanding any other provision of law," did not repeal other federal regulations and statutes governing such sales. *See also E.P. Paup Co. v. Director, OWCP,* 999 F.2d 1341, 1348 (9th Cir.1993) (holding that "the phrase '[n]otwithstanding any other provision of law' is not necessarily preemptive," and finding no preemption). Certainly such general "notwithstanding" language cannot serve to repeal, in whole or in part, so significant a provision as the general habeas statute.

### IV.

The INS argues that our decision in *Magana–Pizano* is distinguishable for

three reasons. First, it says that the "overall judicial review scheme" of the permanent rules demonstrate an intent to preclude habeas jurisdiction. Second, the INS points to 8 U.S.C. § 1252(b)(9), a provision that applies only as part of the permanent rules (and therefore was not at issue in *Magana–Pizano* ), which it says specifically bars habeas jurisdiction in the district courts. Finally, it argues that we should follow the decision of the Eleventh Circuit in *Richardson v. Reno,* 180 F.3d 1311, 1313 (11th Cir.1999), which held that the district courts' habeas corpus jurisdiction with respect to the class of orders at issue was repealed. We address each of these arguments in turn.

### A.

■ As for the overall scheme of the permanent rules, the rules themselves do not mention the district court's habeas jurisdiction under 28 U.S.C. § 2241. Therefore, *Magana–Pizano* and *Felker* preclude us from finding a partial repeal of the statute. The INS correctly notes that the old immigration law contained its own habeas provision, and that Congress repealed that provision, along with the old law's entire section on jurisdiction. *See former* 8 U.S.C. § 1105a(10) (INA § 106(a)(10)). However, both the Supreme Court and this court had held, prior to the repeal, that the old law's specific habeas provision had not supplanted the general federal habeas statute. *Foti v. INS,* 375 U.S. 217, 231, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *Sotelo Mondragon v. Ilchert,* 653 F.2d 1254, 1256 (9th Cir.1980). In fact, we stated specifically in *Sotelo* that the district court had jurisdiction to entertain the petitioner's habeas petition under *both* former 8 U.S.C. § 1105a *and* 28 U.S.C. § 2241. *Sotelo,* 653 F.2d at 1255 (citing *Foti* ).[7]

---

**7.** These holdings made clear that, under the old law, aliens could challenge their deportation either by way of the general habeas statute or by way of the habeas provision in the immigration statute. While the specific pro-

vision was most commonly cited, aliens also occasionally petitioned under § 2241. *See Burr v. Edgar,* 292 F.2d 593, 595 (9th Cir. 1961) (holding that district court had jurisdiction under § 2241 to consider challenge to

Thus, Congress was on notice that its repeal of the habeas statute located within the INA would not be sufficient to eliminate habeas jurisdiction for aliens challenging their removal. We presume that Congress knows the law. *United States v. Gonzalez–Mendez*, 150 F.3d 1058, 1061 (9th Cir.1998). In spite of this knowledge, it chose not to modify the general federal habeas statute so as to limit its application in the immigration context. Accordingly, the INS's argument regarding Congress's intent to establish an exclusive "overall judicial review scheme" that precludes habeas corpus jurisdiction is without merit.

#### B.

In addition to its reference to statutory structure, the INS relies on 8 U.S.C. § 1252(b)(9) in support of its view that habeas jurisdiction has been abolished for certain aliens. That provision states that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The INS adds that the Supreme Court's remarks about this provision require that we construe it to repeal the general federal habeas statute. *See Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 482–83, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

First, again, we must recognize that this provision does not mention the federal ha-

beas statute, and therefore cannot constitute a repeal of it, in whole or in part. While it is true that the Supreme Court has offered some, limited, guidance on the subject of § 1252(b)(9) in its brief discussion of that provision in *American–Arab*, that case does not require a conclusion contrary to the rule set forth in *Felker*. Although § 1252(b)(9) was not at issue in *American–Arab*, the Court characterized it by way of contrasting it with § 1252(g), which was at issue (and which it interpreted narrowly). The Court suggested that § 1252(b)(9) is a "general jurisdictional limitation" and stated that it "channels judicial review" of immigration actions and decisions, acting as a "zipper clause." *Id.* at 483, 119 S.Ct. 936.

■ These statements do not require, or even suggest, that § 1252(b)(9) modifies or amends the general federal habeas statute.[8] Instead, they suggest, and we so hold, that § 1252(b)(9) speaks to a different issue altogether—the need to consolidate (or "zip") *petitions for review* into one action in the court of appeals. The provision itself is titled "consolidation of questions for judicial review," and is properly termed a "zipper clause." However, what it "zips" are requests for review of various kinds of agency action which are heard by means of petitions for "judicial review." It does not affect petitions for habeas corpus. As the first lines of subsection (b) state, that subsection, including (b)(9), applies only "with respect to review of an order of removal *under subsection (a)(1)*." 8 U.S.C. § 1252(b) (emphasis added). Review under subsection (a)(1) occurs only

---

criminal deportation order, and denying petition on the merits); *Flores v. INS*, 524 F.2d 627, 629 (9th Cir.1975) (upholding district court's decision granting writ pursuant to § 2241 where alien sought order requiring INS to extend voluntary departure date). Similar redundant jurisdictional rules are present in other contexts as well. *See, e.g.*, 28 U.S.C. § 1331 (general federal question jurisdiction); 28 U.S.C. § 1343 (jurisdiction for federal civil rights claims).

**8.** Lest there be any doubt, *American–Arab* itself did not involve a habeas petition, but rather a collateral challenge to a deportation order brought under the federal question statute, 28 U.S.C. § 1331. *American–Arab*, 525 U.S. at 477, 119 S.Ct. 936. The Court noted that the lower courts had split on the question whether IIRIRA's transitional rules repeal habeas corpus jurisdiction, but expressed no opinion on the issue. *Id.* at 480 n. 7, 119 S.Ct. 936.

under "chapter 158 of Title 28," which is the Administrative Procedure Act. While the APA governs petitions for review of certain agency actions, *see* 28 U.S.C. § 2342, 2347, it does not govern habeas proceedings; habeas proceedings are brought under, and subject to, 28 U.S.C. § 2241, not under the Administrative Procedure Act. It follows that § 1252(b)(9) does not apply to actions brought in habeas corpus, and certainly does not serve to repeal in whole or in part the general habeas statute.

■ There is another reason it is clear that § 1252(b)(9) does not repeal the district court's habeas jurisdiction. Congress provided in that section only how and under what circumstances "judicial review" would be available. It did not purport to prescribe any procedures governing habeas proceedings. As the Third Circuit has explained, "judicial review" and "habeas corpus" have important and distinct technical meanings in the immigration context. *Sandoval v. Reno*, 166 F.3d 225, 235 (3rd Cir.1999). For purposes of immigration law, at least, "judicial review" refers to petitions for review of agency actions, which are governed by the Administrative Procedure Act, while habeas corpus refers to habeas petitions brought directly in district court to challenge illegal confinement:

> When viewed in light of the history of the court's treatment of habeas jurisdiction in deportation cases, the references to "review" in the AEDPA provision and to "appeal" in the IIRIRA provision are properly understood as relating to judicial review under the APA. This is so because in the immigration context, the court has historically drawn a sharp distinction between "judicial review"—

meaning APA review—and the courts' power to entertain petitions for writs of habeas corpus.

*Id.* In so holding, the Third Circuit relied on the Supreme Court's decision in *Heikkila v. Barber*, 345 U.S. 229, 235, 73 S.Ct. 603, 97 L.Ed. 972 (1953), in which the Court held that although the 1917 Immigration Act was "a statute precluding judicial review" to the maximum extent permissible under the Constitution, it did not eliminate habeas corpus. *Id.* at 235, 73 S.Ct. 603. The *Heikkila* Court rejected the views of three courts of appeals which had held that "habeas corpus itself represented judicial review." *Id.* at 235–36, 73 S.Ct. 603. Similarly, we read the reference to "judicial review" in § 1252(b)(9) as a reference to petitions for review, rather than to habeas corpus.[9]

Our reading does not render § 1252(b)(9) meaningless. On the contrary, a line of immigration cases suggests that Congress had good reason to seek to consolidate certain questions in one petition for review from the final order, and thus a specific purpose for the enactment of § 1252(b)(9). *See Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964); *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). Those cases interpreted a provision of the old immigration law which stated that the "sole and exclusive procedure" for judicial review of final orders of deportation was by way of a petition for review in the courts of appeal. 8 U.S.C. § 1105a(a). The Court determined that only actions which "attack[ed] the deportation order itself," fell within this provision's ambit, so that while mo-

---

**9.** The INS also cites this court's decision in *Hose v. INS*, 180 F.3d 992, 995 (9th Cir.1999) (en banc), in support of its argument that habeas corpus is repealed, and all review of removal orders is now in the courts of appeal rather than in the district courts. We rejected a similar argument in *Magana–Pizano*, noting that "bifurcated review of immigration matters has been the norm, not the excep-

tion" and that Congress chose to vest habeas jurisdiction in the district courts. *Magana–Pizano*, 200 F.3d at 610. Furthermore, *Hose* explicitly did not decide whether or not habeas review remained available in any context; it provides no authority for the proposition that such review does not exist. *Hose*, 180 F.3d at 995 n. 2.

tions to reopen were to be brought in the courts of appeal, *Giova*, 379 U.S. at 18, 85 S.Ct. 156, challenges to denials of stays of deportation fell within the jurisdiction of the district courts, under the general federal question statute. *Cheng Fan Kwok,* 392 U.S. at 213, 88 S.Ct. 1970. However, as the Court explained in *Foti,* after it ruled that the circuit courts had *exclusive* jurisdiction over petitions for review challenging denials of suspension of deportation, "of course, our decision in this case in no way impairs the preservation and availability of habeas corpus relief." *Foti,* 375 U.S. at 231, 84 S.Ct. 306. Following *Foti,* we also held that the "sole and exclusive" provision of the old immigration law did not prevent the district courts from entertaining habeas corpus petitions. *Williams v. INS,* 795 F.2d 738; 744–45 (9th Cir. 1986).

Section 1252(b)(9) is addressed to the question considered in these three Supreme Court cases. Rather than limiting the exclusive jurisdiction of the courts of appeals over petitions for review presenting claims that "attack the deportation order itself," the new law establishes exclusive appellate court jurisdiction over claims "arising from any action taken or proceeding brought to remove an alien." While § 1252(b)(9) replaces the rule of *Cheng Fan Kwok,* and broadens the jurisdiction of the courts of appeal over ques-

tions relating to the removal process, habeas corpus remains unaffected, just as it was not affected by the old law.[10]

### C.

The INS also relies heavily on the Eleventh Circuit's decision in *Richardson v. Reno,* 180 F.3d 1311, 1313 (11th Cir.1999). Since oral argument two other circuit courts have considered the question whether the new immigration law's permanent provisions strip the federal district courts of jurisdiction to hear habeas petitions. In *Max–George v. Reno,* 205 F.3d 194 (5th Cir.2000), the Fifth Circuit held that habeas jurisdiction was repealed (in part) by the new immigration law's permanent rules. Subsequently, in *Liang v. INS,* 206 F.3d 308 (3d Cir.2000), the Third Circuit held that habeas jurisdiction was *not* repealed by those rules. For the reasons we have explained above, we find the Third Circuit's decision both more persuasive than the Fifth's or the Eleventh's and easier to reconcile with existing Ninth Circuit law.[11]

### V.

Finally, we adopt our interpretation of the statute because doing so allows us to avoid the substantial constitutional question that would arise were we to find that Congress had repealed the general federal habeas statute insofar as it applies to re-

10. By way of example, we note that it appears that a motion for a stay of deportation would arise from an action taken to remove an alien, and therefore properly fall within the jurisdiction of the courts of appeal (assuming that such jurisdiction was not barred by some other provision within § 1252), whereas under *Cheng Fan Kwok,* an appeal from such a motion would be properly heard in district court. However, we need not consider the precise scope of the consolidation rule created by § 1252(b)(9) in this case. We hold only that it does not restrict habeas corpus jurisdiction; we describe its relationship to *Cheng Fan Kwok* and other similar cases only to make clear that our holding is fully consistent with § 1252(b)(9).

11. Our reasons for disagreeing with the Fifth and Eleventh Circuit opinions should be clear

from the earlier parts of this opinion, as well as from a reading of the Third Circuit's opinion in *Liang.* However, one brief point is worth mentioning. The Eleventh Circuit, unlike the Fifth, appears to have avoided potential constitutional problems with its decision by construing § 1252(a)(2)(C) as allowing judicial review of both statutory and constitutional questions in the courts of appeal. *Richardson,* 180 F.3d at 1316. While this may result in sound policy, we could not adopt such a rule because, in this circuit, our jurisdiction with respect to petitions for review of removal orders brought by criminal aliens is limited to determining whether or not the statutory bar applies. *Aragon–Ayon,* 206 F.3d at 849; *Magana–Pizano,* 200 F.3d at 607.

moval proceedings involving criminal aliens. *See United States v. X–Citement Video, Inc.,* 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). The Constitution forbids suspension of the writ of habeas corpus. U.S. Const. art. I, § 9, cl. 2. Several courts of appeals have suggested that even a partial repeal of the original habeas statute—now codified at § 2241(c)(1)—would violate the Suspension Clause. *See, e.g., Sandoval v. Reno,* 166 F.3d 225, 237 (3rd Cir.1999); *Henderson v. INS,* 157 F.3d 106, 120 (2d Cir.1998); *Goncalves v. Reno,* 144 F.3d 110, 122–23 (1st Cir.1998); *see also Martinez–Villareal v. Stewart,* 118 F.3d 628, 635 (T.G. Nelson, J., concurring) (stating that statute denying any federal court review to some of habeas petitioner's claims would constitute suspension of writ). Habeas relief for people detained by executive officials of the federal government, including aliens, has been guaranteed by statute since 1789, and in fact was available at common law when the Constitution was enacted.[12]

Apparently in response to this potential constitutional problem, the INS urges that we hold that habeas review remains available for review of "substantial constitutional" claims. The INS's argument appears to assume, mistakenly, that federal court review of executive detention should be treated like federal court review of state court criminal convictions. However, the settings are "totally dissimilar" for several reasons, including that federal detainees have not been tried before a court and that federal court oversight of their detention does not implicate federalism concerns. *See Henderson v. INS,* 157 F.3d 106, 120 (2d Cir.1998).[13] Thus, we are highly skeptical of the INS's argument that the Constitution protects, by way of its guarantee of habeas review for federal detainees, only the narrow scope of review available in the state post-conviction context.[14]

The most significant problem with the INS's attempt to save the statute by preserving review of "substantial constitutional" questions is that at common law the scope of review on habeas corpus could not have been restricted to claims of "substantial constitutional" violations, because the Constitution did not exist at common law. In fact, the Bill of Rights did not exist when the Suspension Clause was enacted.[15] Nor was the scope of review limited to "substantial Constitutional" questions when the habeas review available in immigration proceedings was eliminated "except insofar as it was required by the Constitution." *Heikkila v. Barber,* 345 U.S. 229, 234–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953). During that period, under the

---

**12.** *See, e.g., Somerset v. Stewart,* 98 Eng. Rep. 499 (K.B.1772) (releasing slave on habeas corpus at common law); *United States v. Villato,* 2 U.S. 370, 2 Dall. 370, 1 L.Ed. 419, 28 F.Cas. 377, 378–79 (C.C.D.Pa.1797) (releasing alien wrongly accused of treason). Aliens also received habeas relief prior to the general expansion of the Fourteenth Amendment's protections. *See, e.g., United States v. Jung Ah Lung,* 124 U.S. 621, 8 S.Ct. 663, 31 L.Ed. 591 (1888). In contrast, post-conviction habeas corpus for state prisoners first came into existence shortly after the Civil War. *Compare* 28 U.S.C. § 2241(c)(1) *with* 28 U.S.C. § 2241(c)(3). *See generally* William F. Duker, *A Constitutional History of Habeas Corpus* (1980); Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv. L.Rev. 1362, 1395–7 (1953) (suggesting, in immigration context, that repeal of habeas corpus jurisdiction could violate Suspension Clause).

**13.** For example, if no court could review the INS's interpretation and application of the immigration laws used to detain aliens, it is not clear how habeas corpus would remain an adequate and effective remedy to "test the legality of detention." *Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).

**14.** Apparently in response to arguments concerning the Suspension Clause, the INS argued before the Third Circuit, in a case extremely similar to this one, that the exception for judicial review that should be read into the statute should encompass not only "substantial constitutional" claims, but also claims of statutory error. *See Liang v. INS,* 206 F.3d 308, 322 n. 8 (3d Cir.2000). However, its argument here is that only "substantial constitutional" questions should be cognizable.

**15.** *Henderson,* 157 F.3d at 121 n. 13.

1917 Immigration Act, the Supreme Court reviewed claims of statutory as well as constitutional error in deportation proceedings on habeas corpus. *See, e.g., Delgadillo v. Carmichael,* 332 U.S. 388, 390, 68 S.Ct. 10, 92 L.Ed. 17 (1947) (adopting definition of "entry" contrary to that advanced by government); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 8–10, 68 S.Ct. 374, 92 L.Ed. 433 (1948) (rejecting government's definition of provision authorizing deportation for multiple criminal convictions); *Brownell v. We Shung,* 352 U.S. 180, 182–84 n. 1, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956) (holding that "due process," enforceable on habeas, includes "conformity to statutory grounds"). The Court also considered claims that deportation hearings were conducted unfairly, which is analogous to Flores–Miramontes' claim here. *See, e.g., Kessler v. Strecker,* 307 U.S. 22, 34, 59 S.Ct. 694, 83 L.Ed. 1082 (1939). *See generally,* Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens,* 98 Colum. L. Rev. 961, 1016 (1998).

Of course, this historical evidence does not necessarily dictate what the Constitution commands today. However, it strongly militates against our adopting an interpretation that would require us to reconcile that history with the INS's interpretation of the Suspension Clause. Instead, we avoid the problem altogether by holding that Congress did not modify or amend the general federal habeas statute, which, as we have previously held, allows for review of both statutory and constitutional questions. *Magana–Pizano,* 200 F.3d at 609.

CONCLUSION

To determine whether the district court or the court of appeals has jurisdiction over a claim such as the one at issue

here, we must first ask whether or not § 1252(a)(2) bars the filing of a petition for review. If it does, then the claim cannot be asserted in this court, although habeas corpus remains available in the district court. If, however, the bar does not apply and a petition for review is the appropriate procedure for resolving the issue, the petition must be heard in the court of appeal.[16]

Because Flores–Miramontes' petition for review is subject to § 1252's bar, we dismiss it for lack of jurisdiction. Flores–Miramontes may, however, pursue his claim by way of a habeas corpus proceeding. The mandate shall be stayed for an additional 30 days to allow petitioner to file a habeas corpus petition in district court under 28 U.S.C. § 2241.

DISMISSED.

---

16. Although Flores–Miramontes presented claims for asylum and withholding of removal to the Immigration Judge, the BIA did not address those issues because it ruled that his notice of appeal from the order of removal was not timely filed. As a result, in this court Flores–Miramontes challenges only the BIA's application of its deadline rule to bar his administrative appeal. Accordingly, we do

not decide how a petitioner whose criminal conviction renders him subject to § 1252(a)(2)'s jurisdictional bar may challenge a decision, on the merits, denying him asylum or withholding. We hold only that Flores–Miramontes' challenge to the BIA's application of its deadline rule to his appeal is subject to § 1252's bar, and therefore must be brought by way of habeas corpus.