Tito ALVARENGA–VILLALOBOS,
Petitioner,

v.

Janet RENO, Attorney General of the
United States, and Charles H Demore,
District Director, U.S. Immigration
and Naturalization Service, Respondents.

No. C–00–4291 VRW.

United States District Court,
N.D. California.

Dec. 22, 2000.

Frank P. Sprouls, Ricci Sprouls & Za-deh, San Francisco, CA, for petitioner.

Gail Killefer, Robert Yeargin, U.S. Attorney's Office, San Francisco, CA, for respondents.

## ORDER

WALKER, District Judge.

Petitioner was deported in 1997 and illegally reentered shortly thereafter. The Immigration and Naturalization Service (INS) reinstated petitioner's previous order of deportation and plans to deport petitioner on December 22, 2000. Petitioner seeks collaterally to attack the legality of his prior order of deportation in light of legal developments occurring after his previous order became final. The court must determine whether INA section 241(a)(5), 8 USC § 1231(a)(5), precludes such an attack and if so whether the provision is constitutional.

### I

Petitioner is a native and citizen of El Salvador. He immigrated to the United States and was admitted on or about July 28, 1977. On or about June 17, 1993, petitioner was charged by the INS with being deportable under INA former section 241(a)(2)(A)(ii) because petitioner had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. About a year later, petitioner applied for a waiver of deportation under INA former section 212(c). At a hearing before an Immigration Judge (IJ) on June 16, 1997, petitioner's application for 212(c) relief was pretermitted on the grounds that section 440(d) of the Anti–Terrorism and Effective Death Penalty Act (AEDPA), Pub L No 104–132, 100 Stat 1214 (1996), precluded 212(c) relief for any person convicted of an aggravated felony. At the same hearing, the IJ ordered petitioner deported to El Salvador. Petitioner declined to appeal that decision and was deported to El Salvador on June 20, 1997.

Five months later, in November 1997, petitioner reentered the United States. He was discovered by an INS agent on or about July 20, 1999, in San Francisco county jail. On July 25, 1999, petitioner was given notice of the Attorney General's intent to reinstate his prior deportation order. On January 18, 2000, that prior order was reinstated. Meanwhile, on December 27, 1999, the Ninth Circuit decided *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999). *Magana–Pizano* held that AEDPA section 440(d), which eliminated 212(c) for aggravated felons, should not be applied to persons in deportation proceedings when the provision was enacted on April 24, 1996. Petitioner had been in proceedings at that time.

Despite any doubt *Magana–Pizano* cast upon the validity of petitioner's prior deportation order, the United States indicted petitioner on January 27, 2000, for illegal reentry in violation of 8 USC § 1326. On August 4, 2000, petitioner moved to dismiss the indictment alleging that he had been denied due process when the IJ pretermitted his 212(c) application based on an erroneous legal interpretation. On August 22, 2000, the United States requested leave of court to dismiss the indictment and on August 24, 2000, leave was granted and the indictment was dismissed.

On August 28, 2000, petitioner moved to reopen his immigration proceedings on the grounds that *Magana–Pizano* rendered the IJ's decision not to allow petitioner to pursue 212(c) relief unlawful and that petitioner was entitled to have his application for 212(c) relief heard on the merits. The IJ denied petitioner's motion to reopen on September 6, 2000, finding that the immigration court lacked jurisdiction to hear petitioner's claim. Petitioner did not appeal the IJ's decision to the BIA but applied for and was granted a stay of deportation by the IJ, permitting petitioner to seek relief in this court.

On November 16, 2000, petitioner filed an application for a writ of habeas corpus in this court requesting that the court stay deportation and remand the matter to the IJ with instructions to conduct a 212(c) discretionary relief hearing. Petitioner claims that INA section 241(a)(5) does not apply to him but that if it does, then as applied to him, it violates the Due Process Clause of the United States Constitution.

## II

### A

■ The court has jurisdiction under 28 USC § 2241 to hear this petition. It is clear under Ninth Circuit precedent that section 2241 habeas jurisdiction in the district court remains wholly intact despite the various jurisdictional limitations of the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub L No 104–208, 110 Stat 3009 (Sept 30, 1996), as amended by Act of Oct 11, 1996, Pub L No 104–302, 100 Stat 3656. *Flores–Miramontes v. INS*, 212 F.3d 1133, 1136 (9th Cir.2000). Habeas remains intact because IIRIRA failed explicitly to revoke section 2241 habeas jurisdiction as required by *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). *Flores–Miramontes*, 212 F.3d at 1136. While *Flores–Miramontes* found that IIRIRA had not limited habeas, the court itself limited habeas jurisdiction in cases in which direct review to the court of appeals

is available. The *Flores–Miramontes* court stated:

> To determine whether the district court or the court of appeals has jurisdiction over a claim such as the one at issue here, we must first ask whether or not § 1252(a) bars the filing of a petition for review. If it does, then the claim cannot be asserted in this court, although habeas corpus remains available in the district court. If, however, the bar does not apply and a petition for review is the appropriate procedure for resolving the issue, the petition must be heard in the court of appeals.

*Flores–Miramontes*, 212 F.3d at 1143. Under this rule, petitioner would be unable to bring a claim challenging his removal order in the district court if review in the court of appeals were available. In this case, review in the court of appeals is unavailable because petitioner is a criminal alien for purposes of 8 USC § 1252(a)(2)(C). Thus, habeas jurisdiction is available here.

### B

■ INA section 241(a)(5), 8 USC § 1231(a)(5), states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Petitioner presents two arguments why this section does not apply to him. First, petitioner argues that since the section refers to "orders of removal" rather than "orders of deportation," it was not meant to apply to him. This argument must be rejected. In IIRIRA section 309(d)(2), Congress defined "order of removal" to "include a reference to an order of exclu-

sion and deportation or an order of deportation." 110 Stat 3009–627; see also *Prado Hernandez v. Reno*, 86 F.Supp.2d 1037, 1040 (W.D.Wash.1999) (rejecting the argument made by petitioner); *Mendez–Tapia v. Sonchik*, 998 F.Supp. 1105, 1108 (D.Ariz. 1998) (same); *Zisimopoulos v. Reno*, 1998 WL 437266*1 n. 2 (E.D.Pa.1998) (same). Thus, section 241(a)(5) applies to orders of deportation.

■ Petitioner's second argument is that the preclusion of review of previous removal orders effected by section 241(a)(5) applies only to lawful removal orders. Petitioner relies on *Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir.1990). In *Wiedersperg*, the Ninth Circuit held that 8 USC § 1105a(c), which states: "An order of deportation or exclusion shall not be reviewed by any court if the alien * * * has departed from the United States after the issuance of the order," did not preclude review of an order of deportation based on a conviction that was subsequently vacated. *Wiedersperg*, 896 F.2d at 1181–82. The court determined that as a matter of statutory construction, the jurisdictional bar only applied when the order of deportation was "legally executed." *Id.* At the same time, the *Wiedersperg* court distinguished *Hernandez–Almanza v. United States Dep't of Justice*, 547 F.2d 100 (9th Cir.1976), a case in which a BIA decision refusing to allow an alien to reopen deportation proceedings was affirmed. The court relied in part on the fact that the alien in *Hernandez–Almanza* was challenging his order of deportation after illegally reentering the United States. *Wiedersperg*, 896 F.2d at 1182. Hence, the applicability of *Wiedersperg* to the present situation is doubtful.

Furthermore, the same type of argument that petitioner is making here was rejected by the United States Supreme Court in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In that case, it was argued that 8 USC § 1326 allowed review of an unlawful underlying deportation order. The Court examined the language of the statute, which neither provided for nor rejected any review of the underlying deportation order, and concluded that no review was intended. *Id.* at 834–37, 107 S.Ct. 2148. The Court contrasted section 1326 with a previous enactment of that provision which criminalized reentry by an alien who had been "deported in pursuance of law." *Id.* at 835, 107 S.Ct. 2148.

The text of INA section 241(a)(5) makes no mention of "lawful" orders of deportation. Following *Mendoza–Lopez*, the court concludes that the section precludes review of any order of deportation, lawful or otherwise. Even if this is not the case, the court has determined that petitioner's order of deportation in this case was not unlawful. See Part IIC infra. Thus, even if section 241(a)(5) allows review of unlawful orders, there is no statutory authority for review in this situation. The only case that appears to have addressed this precise scenario, an unpublished Third Circuit case, concluded that section 241(a)(5) precluded review of an order that erroneously denied 212(c) relief. See *Polanco v. Reno*, No 00–5205, 2000 WL 1682731 (3rd Cir. 2000) (unpublished). Of course, this unpublished, out-of-circuit, opinion does not have binding precedential effect on this court. But neither would a published Third Circuit opinion.

■ The more interesting question is whether it is permissible for this court to cite the case. Ninth Circuit Rule 36–3 declares: "Unpublished dispositions and orders of this Court may not be cited to or by the courts of this circuit except in the following circumstances * * *." Since the Third Circuit case cited above is not an unpublished disposition of the Ninth Circuit, the court concludes that its citation does not run afoul of Rule 36–3. The Ninth Circuit itself has on occasion cited unpublished decisions from other circuits. See, e.g., *United States v. Garcia*, 210 F.3d 1058, 1059 (9th Cir.2000); *Axess Intern., Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935, 942 (9th Cir.1999). The Third Circuit appears to permit the citation of its unpublished opinions but cautions that they have

no precedential value. See, e.g., *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 381 (3rd Cir.2000) ("In an unpublished opinion (hence non-precedential under our Internal Operating Procedures § 5.3) * * *."); *Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 352 (3rd Cir. 2000). Thus, the court need not determine whether a Third Circuit rule prohibiting citation would be binding on this court. Since neither the Ninth Circuit nor Third Circuit rule prohibits this court from citing this unpublished case, the court also need not weigh into the now simmering controversy about the constitutionality of prohibitions against citation to unpublished opinions. See *Anastasoff v. United States*, 223 F.3d 898 (8th Cir.2000), vacated 235 F.3d 1054 (8th Cir.2000) (en banc).

In *Polanco v. Reno*, No 00–5205 (3rd Cir.2000), the analogous Third Circuit case, the court reviewed a denial of a petition for a writ of habeas corpus filed by an alien who was being deported under INA section 241(a)(5). The alien had previously been deported because of a drug conviction and had been denied 212(c) discretionary review by the BIA in reliance on BIA precedent that was later overturned after the alien was deported. The court stated: "We agree with the District Court's conclusion that section 1231(a)(5) constitutes a statutory bar to reexamining Polanco's original deportation order." *Polanco* at 4. For these reasons, the court concludes that INA section 241(a)(5) applies to petitioner and by its terms precludes review of his previous order of deportation. The question remains whether this preclusion is constitutional.

### C

■ In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court "established that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *Id.* at 839, 107 S.Ct. 2148. Petitioner in the case at bar

argues that due process also mandates that he be permitted collaterally to attack his previous deportation order. The extension of *Mendoza–Lopez* to the civil deportation context, however, is no small step. The Supreme Court noted in *Mendoza–Lopez* that its holding was limited to the criminal context. It stated: "We note parenthetically that permitting collateral challenge to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize today is available only in criminal proceedings instituted after reentry." *Id.* at 839 n. 17, 107 S.Ct. 2148.

But assume for a moment that the *Mendoza–Lopez* standard governs in this case. Under that standard, due process requires the availability of a forum for collaterally attacking a prior order of deportation only when "the violation of [the alien's] rights that took place * * * amounted to a complete deprivation of judicial review of the determination." *Id.* at 840, 107 S.Ct. 2148. In the case at bar, this standard cannot be met. Petitioner alleges that the deportation order was unlawful because the IJ relied on legal authority which was later overruled by *Magana–Pizano*. Petitioner does not allege that anything prevented him from appealing the IJ's decision pretermitting his application for 212(c) relief and ordering him deported. Rather, petitioner argues that he did not appeal because "[h]e was informed that the law was unambiguous and that he was not entitled to relief." Petition at 3, ¶ 11. Petitioner further asserts: "Even if had appealed [sic] the BIA would surely have issued a summary affirmance under *Soriano* well before *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999), which was published on December 27, 2000." Petition at 4, ¶ 13. In fact, petitioner voluntarily waived his appeal. *Id.*, Exh B.

The deprivation of judicial review that occurred in this case was the direct result of petitioner's choice to waive review. Thus, the *Mendoza–Lopez* standard cannot

be met. The court in *Polanco* came to the same conclusion. It stated:

> The only way the section 1231(a)(5) [sic] could raise due process concerns is if Polanco's original deportation proceeding were so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review." That is not the situation here. Polanco presented his arguments to an unbiased immigration judge, he appealed his case to the BIA, and then he chose not to contest the BIA's ruling by filing a habeas petition prior to his deportation. Polanco does not claim that his decision to forego a habeas action was involuntary or in any way invalid; indeed, he offers no excuse, other than his belief that such an action would have been futile.

*Polanco v. Reno*, No 00–5205 at 6 (3rd Cir.2000) (citations omitted).

Not only did petitioner in the case at bar have complete access to judicial review in his prior deportation hearing, it is not clear that the IJ's determination was unlawful. While it is certainly true that *Magana–Pizano* came to a different legal conclusion about the retroactive application of AEDPA section 440(d) from that of the IJ, *Magana–Pizano* was not decided until well after petitioner's removal proceedings were closed. It is settled that in civil cases new rules of law are applied retroactively only to cases still on direct review at the time the case making the new law is decided. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review * * *."). Since petitioner's deportation hearing was not on direct review when *Magana–Pizano* was decided, petitioner does not receive the benefit of the new rule announced in that case.

The IJ's ruling was not unlawful. It certainly did not amount to "a complete deprivation of judicial review of the determination." *Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148. Hence, even under the *Mendoza–Lopez* standard, one that applies in the criminal context, petitioner has not shown that due process requires that he be allowed collaterally to attack his prior order of deportation.

**D**

■ Finally, petitioner raises an equal protection challenge to certain regulations proposed by the INS. As the regulations are not yet in effect, petitioner's challenge of them is not ripe. See *Abbott Laboratories v. Gardner*, 387 U.S. 136, 147, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) overruled on other grounds *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The court has determined that INA section 241(a)(5) precludes review of petitioner's previous order of deportation. The court has also determined that section 241(a)(5) does not violate due process as applied to petitioner because petitioner has failed to show that he was prevented from seeking judicial review of the previous order. Finally, the court has rejected as unripe petitioner's equal protection claim directed at unspecified, not yet finalized, INS regulations. For these reasons, petitioner's application for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.