**Trevor DRAKES, Petitioner,**

v.

**Charles W. ZIMSKI, Acting Director of Immigration and Naturalization Service; Janet Reno, Attorney General, Respondents.**

No. 00–3232.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 30, 2000.

Filed Feb. 20, 2001.

Alan H. Smith, York, Pennsylvania, for petitioner.

Kate L. Mershimer, Office of the United States Attorney, Harrisburg, Pennsylvania, for respondents.

Before: SCIRICA, NYGAARD, and BARRY, Circuit Judges.

## OPINION OF THE COURT

BARRY, Circuit Judge.

Trevor Drakes, a native of Guyana, has lived in the United States since 1981 as a lawful, permanent resident. On August 12, 1998, Drakes was stopped by the Delaware State Police for a traffic violation. While the facts of what he did are less than clear, at minimum he provided a false name to the police and later pled guilty to two counts of second-degree forgery under Delaware state law. The Immigration and Naturalization Service ("INS") determined that second-degree forgery was a deportable aggravated felony under 8 U.S.C. § 1101(a)(43)(R) and removal proceedings were initiated. Although the Immigration Judge found that Drakes' crime did not satisfy the statutory definition of "aggravated felony," the Board of Immigration Appeals ("BIA") disagreed and ordered Drakes deported.

Drakes filed a Petition for Review and a Petition to Stay Deportation in the United States District Court. Because of the 8 U.S.C. § 1252(b)(2) jurisdictional bar,[1] the District Court transferred the case to this Court. We conclude that because Drakes is an alien convicted of an aggravated felony, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") divests this Court of jurisdiction to consider his petition on the merits. 8 U.S.C. § 1252(a)(2)(C). Accordingly, the petition will be dismissed.

It is by now well understood that under 8 U.S.C. § 1252(a)(2)(C), this Court lacks jurisdiction to consider a final order of removal against an alien convicted of one or more specified criminal offenses.[2] *Liang v. INS*, 206 F.3d 308 (3d Cir.2000) is

our latest pronouncement to that effect. This limitation on our jurisdiction comes into play, however, only when two facts (which have, somewhat inappropriately, come to be known as "jurisdictional facts") exist: (1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses.

■ The initial question before us, then—one we have not before explicitly considered—is whether we have jurisdiction to determine whether these jurisdictional facts are present. Drakes argues, and the government concedes, that we have jurisdiction to determine our jurisdiction under § 1252(a)(2)(C). We agree, thus joining all of our sister circuits which have considered the issue. *See, e.g., Tapia Garcia v. INS*, 237 F.3d 1216, 1220–21 (10th Cir.2001); *Mahadeo v. Reno*, 226 F.3d 3, 9 (1st Cir.2000): *Bell v. Reno*, 218 F.3d 86, 89–90 (2d Cir.2000); *Lewis v. INS*, 194 F.3d 539, 542 (4th Cir.1999); *Santos v. Reno*, 228 F.3d 591, 597 n. 11 (5th Cir.2000); *Diakite v. INS*, 179 F.3d 553, 554 (7th Cir.1999) (per curiam); *Flores–Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir.2000); *see also Lettman v. Reno*, 168 F.3d 463, 465 (11th Cir.1999) (holding that the Court of Appeals has jurisdiction to decide its jurisdiction under the transitional rules of the IIRIRA), *rev'd on other grounds*, 207 F.3d 1368 (11th Cir.2000).

Whether the requisite jurisdictional facts exist in a particular case is ordinarily easily determined. As the Fourth Circuit stated:

> [W]here ... a criminal statute on its face fits the INA's deportability classifi-

---

1. 8 U.S.C. § 1252(b)(2) provides, as relevant here, that "the petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."

2. 8 U.S.C. § 1252(a)(2)(C) provides in pertinent part:
   Notwithstanding any other provision of law, no court shall have jurisdiction to review

any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § ] 1182(a)(2)....

The offenses referred to in § 1252 include aggravated felonies; controlled substance convictions; certain firearm, national security, and defense crimes; and multiple convictions for crimes of moral turpitude.

cation, all convictions under that statute necessarily render an alien deportable. To go beyond the offense as charged and scrutinize the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in the face of the jurisdiction limiting language of IIRIRA.

*Hall v. INS,* 167 F.3d 852, 856 (4th Cir. 1999). *See also Lewis,* 194 F.3d at 543.

The rub here is this, and it is two-fold: Drakes does not take issue in any respect with his Delaware conviction; rather, he contends that the forgery of which he was convicted under Delaware law is not the crime of forgery Congress had in mind and intended to encompass when it used the term in 8 U.S.C. § 1101(a)(43)(R). He also contends that his sentence of one year on each of the two counts to which he pled guilty does not meet the statute's requisite threshold of "at least one year." If he is right, review is not precluded and the removal order will be vacated for failing to allege a deportable offense. If he is wrong, as we have already suggested, § 1252(a)(2)(C) prohibits further inquiry.

## I.

The Immigration and Naturalization Act ("INA") provides that an alien convicted of an "aggravated felony" at any time after admission is deportable. INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense relating to ... forgery ... for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). Drakes pled guilty to forgery in the second degree under Delaware law, which provides, as relevant here, that a person is guilty of forgery when he or she alters, makes, possesses, or transfers certain written instruments while "intending to defraud, deceive or injure another person." 11 Del.C. § 861. Drakes contends that the Delaware statute goes beyond forgery's traditional "intent to defraud" element by also including the in-

tents to "injure" and "deceive." "Deceive" and "defraud," the terms on which Drakes focuses, are not, of course, synonymous. *See United States v. Yermian,* 468 U.S. 63, 73, n. 12, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984) ("Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit."). If Congress intended "forgery" to require an intent to defraud and Drakes meant only to deceive, the Delaware conviction conceivably would not qualify as an aggravated felony.

The government gives this argument the back of its hand, responding with little more than the simple tautology that forgery means forgery, just as "a rose is a rose." Appellee Br. at 18. In the plain language of § 1101(a)(43)(R), the government contends, Congress added forgery to the list of aggravated felonies, and Drakes was convicted of what Delaware calls "forgery." Pronouncing a flower to be a rose, however, does not necessarily make it one. The language of a federal statute must be construed to have the meaning intended by Congress, not the Delaware legislature. *See Taylor v. United States,* 495 U.S. 575, 590, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("It seems to us to be implausible that Congress intended the meaning of 'burglary' ... to depend on the definition adopted by the State of conviction."); *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 119–20, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control."); *United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law."). To determine whether the second-degree forgery to which Drakes pled guilty comes

within the "forgery" Congress intended, therefore, we must examine Delaware state law to see if it encompasses acts beyond those subject to prosecution under the federal definition. *See Taylor,* 495 U.S. at 600, 110 S.Ct. 2143 (concluding that this "formal categorical approach" is appropriate in such circumstances); *see also In re Alcantar,* 20 I. & N.Dec. 801, 809 (B.I.A.1994) (applying the same approach).

■ The meaning of "forgery" in federal law is ambiguous. Congress has never specifically defined forgery, although it has used the term in numerous statutes outlawing various acts. In some of these statutes, Congress did not specify the requisite culpable intent. *See, e.g.,* 18 U.S.C. § 485 (prohibiting forgery of coins or bars in denominations greater than five cents). In at least twenty other statutes, however, Congress specified that an intent to defraud is required. In four of those statutes, Congress used the term "forgery" together with the phrase "with intent to defraud," seemingly indicating that the two need not be joined. *See, e.g.,* 18 U.S.C. § 471 (prohibiting forgery of federal obligations "with intent to defraud"); 18 U.S.C. § 478 (prohibiting forgery of foreign *obligations* "with intent to defraud"); 18 U.S.C. § 482 (prohibiting forgery of foreign bank notes "with intent to defraud"); 18 U.S.C. § 500 (prohibiting forgery of postal service money orders "with intent to defraud"). Thus, in Congress' view, it may well be possible to commit "forgery" without "fraud," or at least fraud in the ordinary sense of misrepresentation for material gain. *See United States v. Cowan,* 116 F.3d 1360, 1361–63 (10th Cir. 1997) (had Congress intended to make the intent to defraud an element of 18 U.S.C. § 505, it would have done so expressly).

Where federal criminal statutes use words of established meaning without further elaboration, courts typically give those terms their common law definition. *Moskal v. United States,* 498 U.S. 103, 114, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *Gilbert v. United States,* 370 U.S. 650, 655,

82 S.Ct. 1399, 8 L.Ed.2d 750 (1962) ("in the absence of anything to the contrary it is fair to assume that Congress used ['forgery'] in the statute in its common-law sense."). If research into the common law yields several competing definitions, however, courts should look to the reading that "best accords with the overall purposes of the statute" even if it is the minority view. *Moskal,* 498 U.S. at 116–17, 111 S.Ct. 461. Where the traditional definition is out of step with the modern meaning of a term, more "generic, contemporary" definitions—such as those found in state statutes—may apply. *See Taylor,* 495 U.S. at 596, 598, 110 S.Ct. 2143. Furthermore, "Congress' general purpose in enacting a law may prevail over this rule of statutory construction" altogether. *Id.*

Courts generally define traditional common-law forgery as requiring an intent to defraud. *See, e.g., United States v. Mc-Govern,* 661 F.2d 27, 29 (3d Cir.1981). Similarly, state forgery statutes frequently cite intent to defraud as the sole requisite intent. *See* 36 *Am.Jur.2d Forgery* § 26 (fraudulent intent an element of most state statutes, although some allow intent to injure as well). Significantly for the present case, however, at least six states in addition to Delaware provide in their current forgery statutes for an intent to deceive. *See* Conn.Gen.Stat. § 53a–138 (1999); N.Y.Penal Law § 170.05 (2000); N.D.Cent. Code § 12.1–24–01 (2000); Ky.Rev.Stat. Ann. § 516.020 (2000); Me.Rev.Stat.Ann. tit. 17–A § 703 (1999); Neb.Rev.Stat. § 28–602 (2000).

With these conflicting definitions in mind, we note that Congress evidenced an intent to define forgery in its broadest sense by stating that "an offense *relating to* ... forgery" qualifies under § 1101(a)(43)(R) (emphasis added). Unless the words "relating to" have no effect, the enumerated crime—here, forgery—must not be strictly confined to its narrowest meaning. *See Ruiz–Romero v. Reno,* 205 F.3d 837, 840 (5th Cir.2000) (alien who transported illegal aliens within the United

States committed an aggravated felony as his crime "related to" alien smuggling; phrase describes a class of crimes and does not constitute a restriction). The Delaware forgery statute, while apparently encompassing more conduct than is encompassed by traditional definition of forgery, is "related to" forgery in a way that several states have made part of their criminal codes. Given the differing formulations of forgery and the evidence of Congress' general purpose, we believe it would be eminently appropriate for the BIA to read into § 1101(a)(43)(R) the broad minority definition of forgery rather than the narrow traditional definition.

The BIA did not, at least explicitly, engage in the exercise in which we have engaged to determine the meaning of forgery for purposes of § 1101(a)(43)(R). Rather, the BIA simply found that (1) the section covers offenses "relating to" forgery, (2) Drakes was convicted of forgery under § 861 of the Delaware Criminal Code, (3) *a fortiori*, his offense was an offense relating to forgery under the Act. Because we come to the same conclusion, however, it is unnecessary to decide what deference must be paid the BIA's scant analysis and somewhat barebones conclusion in this case.

We do not doubt that the principles of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) apply in general to the statutory scheme set out in the INA. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). The *Aguirre–Aguirre* Court relied upon 8 U.S.C. § 1103(a)(1), which states that "the Attorney General shall be charged with the administration and enforcement" of statutes under Chapter 8 and that the "determination and ruling by the Attorney

General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). "Based on this allocation of authority, ... the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *Id.* at 425, 119 S.Ct. 1439 (citation, quotation omitted).

The Attorney General (through the BIA) ruled that Drakes's forgery conviction qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(R). This Court's jurisdiction depends on whether Drakes did or did not commit an aggravated felony under that section. For the purpose of determining our jurisdiction, we must examine the definition of § 1101 "forgery," a question of law which requires the interpretation of Immigration law. Failing to accord deference to the BIA's interpretation of § 1101, as bereft of explanation as it was, would appear to run counter to the Supreme Court's mandate in *Aguirre–Aguirre*.[3]

On the other hand, we noted in *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999) that *Chevron* deference is not required where the interpretation of a particular statute does not "implicate[] agency expertise in a meaningful way" but presents instead "a pure question of statutory construction for the courts to decide." *Sandoval*, 166 F.3d at 239–40 (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). *Sandoval* involved determining the effective date of a particular statute, a specific question having little to do with agency expertise. Even though *Sandoval* predated *Aguirre–Aguirre*, its reasoning does not seem the least bit undercut by the conclusion reached in that case.

---

**3.** Other courts have employed *Chevron* deference in interpreting statutes that ultimately determined their jurisdiction. *See, e.g., Bell v. Reno*, 218 F.3d 86, 90 (2d Cir.2000) (analyzing under *Chevron* standard whether the Immigration Act of 1990 superseded the ADAA date restriction with regard to aggravated fel-

onies); *Lettman v. Reno*, 207 F.3d 1368, 1370 (11th Cir.2000) (same); *Maghsoudi v. INS*, 181 F.3d 8, 14 (1st Cir.1999) (according "due deference" to the BIA interpretation of a statute in deciding whether or not a crime involves "moral turpitude" within the terms of 8 U.S.C. § 1227(a)(2)(A)(ii)).

This case appears to fall somewhere between *Aguirre–Aguirre* and *Sandoval.* Certainly, the BIA determined a question of law concerning § 1101(a)(43)(R). Just as certainly, however, not only did the BIA not, at least explicitly, call upon any particular expertise in reaching that determination, but defining under federal law a term such as "forgery" is what federal courts do all the time. Nonetheless, as we have suggested, whether we accord deference to the BIA or reach our own conclusion, the result is the same.

## II.

Having lost on his first argument, Drakes, of course, could still prevail were we to agree with him that his sentence was simply not long enough to be a "term of imprisonment [of] at least one year," 8 U.S.C. § 1101(a)(43)(R), "regardless of any suspension of the imposition or execution of that imprisonment." 8 U.S.C. § 1101(a)(48)(B). Drakes contends, and the IJ but not the BIA found, that his suspended sentence of one year on each count does not fall within the definition of "at least one year." We do not agree. "At least" is commonly held to mean "at the lowest" or "as the minimum." *Webster's Third New International Dictionary* 1287 (1993). There is no indication that Congress meant anything different when it drafted the statute.[4] A sentence of one year lasts a specific amount of time, *i.e.,* one year. Just as there is no denying that a person who has one apple also has "at least" one apple, someone sentenced to one year also qualifies as being sentenced to "at least" one year. Indeed, we have already concluded that "Congress was sufficiently clear in its intent to include certain crimes with one-year sentences in the definition of 'aggravated felony.'" *United States v. Graham,* 169 F.3d 787, 788 (3d Cir.1999), *cert. denied* 528 U.S. 845, 120 S.Ct. 116, 145 L.Ed.2d 99 (rejecting the

argument that a one-year sentence does not implicate 8 U.S.C. § 1101(a)(43)(G)).

## III.

Because Drakes' conviction for forgery under Delaware law and the ensuing one-year sentence met the definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(R), we will dismiss Drakes' petition for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C).

---

4. Drakes points out that in *Song v. INS,* 82 F.Supp.2d 1121 (C.D.Cal.2000), the District Court mentioned that aliens are aggravated felons under § 1101(a)(43)(R) if they are sentenced to "more than a year." *Id.* at 1126. The *Song* Court referenced the statute only in passing, however, and apparently simply misstated its wording.