**Vinodbhai Bholidas PATEL, Petitioner**

v.

**John ASHCROFT, Attorney General of the United States, Respondent**

No. 01–3365.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 8, 2002.

Filed: June 20, 2002.

James J. Orlow, Philadelphia, PA, for Petitioner.

Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, David J. Kline, Principal Deputy Director, Hugh G. Mullane, Senior Litigation Counsel, David J. Kline, John M. McAdams, Jr., Terri J. Scadron, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for Respondent.

Before: McKEE, BARRY, Circuit Judges, and ALARCON, Senior Circuit

Judge.*

## OPINION OF THE COURT

McKEE, Circuit, Judge.

This petition for review of an order of removal requires that we determine if a conviction for harboring an alien constitutes an "aggravated felony." The Immigration Judge (sometimes referred to as "IJ") concluded that it was, and that the permanent resident alien who is the petitioner here was therefore removable. For the reasons that follow, inasmuch as we agree with the IJ's conclusion, we must dismiss the petition for review because we lack subject matter jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

Vinodbhai Bholidas Patel is a native and citizen of India who was admitted to the United States as a nonimmigrant in 1984. In 1990, he adjusted his status to that of lawful permanent resident. However, on January 10, 2000, he pled guilty to harboring an alien in violation of § 274(a)(1)(A)(iii) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1324(a)(1)(A)(iii), and was subsequently sentenced to five months imprisonment, followed by three years of supervised release.

While he was serving his sentence, the Immigration and Naturalization Service ("INS") issued a Notice to Appear charging him with being removable based upon his conviction for an aggravated felony as defined in INA § 101(a)(43)(N), 8 U.S.C. § 1101(a)(43)(N). The INS alleged that harboring an alien is an aggravated felony rendering Patel removable. Based upon that Notice, the INS eventually took Patel into custody and placed him in detention.[1]

At a hearing before an Immigration Judge on February 15, 2001, Patel, through counsel, acknowledged the fact of his conviction, but argued that his crime was not an aggravated felony as defined in the INA. He did not, however, request relief from removal.[2] The IJ disagreed, and held that harboring an alien was an aggravated felony and that Patel was therefore removable as charged. Accordingly, the IJ ordered Patel removed to India. The Board of Immigration Appeals ("BIA") affirmed, and this petition for review followed.

---

* The Honorable Arthur L. Alarcon, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. This is the second time that Patel has been before this court. While he was in INS custody, he challenged his mandatory detention in a habeas petition under 28 U.S.C. § 2241. *See* 8 U.S.C. § 1226(c). The district court denied his request for habeas relief. However, we reversed, holding that INA § 1226(c)'s mandatory detention provision was unconstitutional. Accordingly, he was ordered released from INS custody unless the government promptly determined whether his continued detention was necessary to prevent risk of flight or danger to the community. *Patel v. Zemski*, 275 F.3d 299 (3d Cir.2001).

2. The statutory provisions for relief from removal include cancellation of removal, INA § 240A, 8 U.S.C. § 1229b, withholding of removal, INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), asylum, INA § 208(a), 8 U.S.C. § 1158, voluntary departure, INA § 240B, 8 U.S.C. § 1229c, and Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted Dec. 10, 1984, S. Treaty Doc., No. 100–20 (1988), as well as non-statutory options such as post-conviction relief or legitimate claims of citizenship. However, "aliens who have committed aggravated felonies are not eligible for some of these forms of relief." *Patel*, 275 F.3d at 314 n. 11.

## II. DISCUSSION

### A. Standard of Review

At the outset, we note that there is some confusion surrounding the proper standard of review in cases such as this. We usually afford deference to decisions of administrative agencies when we are reviewing the agency's interpretation of a statute the agency is charged with administering. See *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This deference recognizes the agency's expertise in addressing issues that often arise when interpreting such statutes. However, we recognize that legal issues that turn on a pure question of law not implicating the agency's expertise do not raise the same concerns under *Chevron*. See *Sandoval v. Reno*, 166 F.3d 225, 250, 239–40 (3d Cir.1999) ("An issue concerning a statute's effective date is not one that implicates agency expertise in a meaningful way, and does not, therefore, appear to require *Chevron* deference."). Accordingly, when we are called upon to resolve pure questions of law by statutory interpretation, we decide the issue de novo without deferring to an administrative agency that may be involved. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Our analysis here involves a pure question of law because we must determine if Patel's criminal conviction is an "aggravated felony" under 8 U.S.C. § 1252(a)(2)(C); the relevant statute. Moreover, inasmuch as our subject matter jurisdiction turns upon that inquiry, the need to defer to the expertise of the INS is attenuated at best. Nevertheless, we have previously suggested that some deference is still required under *Chevron* even though we are reviewing a purely legal question such as the BIA's interpretation of a criminal statute. See

*Drakes v. Zimski*, 240 F.3d 246, 250 (3d Cir.2001).

In *Drakes*, we noted that our decision in *Sandoval* predated the Supreme Court's decision in *INS v. Aguirre–Aguirre*, 526 U.S. 415, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) wherein the Court reversed the decision of the Court of Appeals for the Ninth Circuit because the circuit court had not afforded proper deference to the BIA's interpretation of a statute. However, *Aguirre–Aguirre* concerned the extremely sensitive issue of whether criminal conduct that an alien admitted committing in Guatemala precluded the alien's eligibility for asylum or withholding of deportation from the United States. The alien claimed that his conduct in Guatemala should not bar his eligibility for that relief because he committed those crimes as part of a protest against certain policies of the government of Guatemala. The IJ granted the requested relief holding that the alien had demonstrated a well founded fear of persecution based upon his political beliefs if he was returned to Guatemala. The BIA reversed. The BIA did not decide if the alien had demonstrated a risk of persecution. Rather, the BIA simply concluded that the alien "had committed a serious nonpolitical crime" within the meaning of the relevant statute, and he was therefore not eligible for asylum or withholding of deportation. 526 U.S. at 422, 119 S.Ct. 1439. However, the court of appeals reversed the BIA's ruling. That court held that the BIA should have weighed certain factors before deciding that the alien's Guatemalan crimes destroyed his eligibility for asylum or withholding of deportation. The Supreme Court reversed. In doing so, the Court stated:

> It is clear that principles of *Chevron* deference are applicable to this statutory scheme.... In addition, we have recognized that judicial deference to the Executive Branch is especially appropri-

ate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations. A decision by the Attorney General to deem certain offenses violent offenses committed in another country as political in nature, and to allow the perpetrators to remain in the United States, may affect our relations with that country or its neighbors. The judiciary is not well positioned to shoulder primary responsibility for assessing the likelihood and importance of such diplomatic repercussions.

*Id.* (internal quotation marks and citations omitted). Those considerations were not present in *Drakes*, and they are absent here. Ultimately, we did not decide if *Chevron* deference applied to our analysis in *Drakes* because we concluded that the result would be the same whether we afforded *de novo* or deferential review. That is also our situation here. Therefore, we need not now decide the issue of whether deference should be afforded to the BIA's interpretation of the statutory definition of "aggravated felon." Just as in *Drakes*, our result would be the same whether we afford the BIA's statutory interpretation deferential or *de novo* review. Under either scope of review we conclude that the BIA did not err in concluding that Patel has been convicted of an aggravated felony.

## B. Jurisdiction

Under § 242(a)(2)(C) of the INA, 8 U.S.C. § 1252(a)(2)(C), courts of appeals lack jurisdiction to review a final order of removal for an alien convicted of one or more specified criminal offenses, including any aggravated felony.[3] However, notwithstanding the seemingly broad restriction of jurisdiction contained in § 242(a)(2)(C), we retain the jurisdiction to determine whether we can review a decision of the BIA even though that review entails the same inquiry as a review of the merits of the BIA's decision; i.e., whether the underlying criminal offense is an "aggravated felony." Therefore, we have jurisdiction here to determine whether Patel is an alien, and whether he is removable by reason of having been convicted of one of the enumerated offenses in INA § 242(a)(2)(C). *See Drakes*, 240 F.3d at 247. If both of those conditions are satisfied, § 242(a)(2)(C) prohibits further adjudication of the petition for review and we must dismiss for lack of jurisdiction. *Id.* at 248. However, if either condition is not satisfied, our review is not precluded, and we have jurisdiction to review the BIA's decision. *Id.* In that instance, the petition for review must be granted and the order of removal vacated. *Id.* Simply put, we have jurisdiction to determine our jurisdiction under § 242(a)(2)(C). *Drakes*, 240 F.3d at 247. Our inquiry here need only focus on the second factor since it is undisputed that Patel is an alien. The instant dispute centers instead on whether Patel's conviction for harboring aliens is an aggravated felony, rendering him removable. The jurisdiction inquiry is, therefore, a back-door merits inquiry because the former supplies the answer for the latter.

## C. Is a Conviction for Harboring Aliens an Aggravated Felony?

INA § 274(a)(1)(A) provides as follows:

**3.** INA § 242(a)(2)(C) provides, in pertinent part: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. §§] 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title...." The offenses referred to in § 1252 include aggravated felonies; controlled substance convictions; certain firearm, national security, and defense crimes; and multiple convictions for crimes of moral turpitude.

Bringing in and harboring certain aliens

(a) Criminal penalties

(1)(A) Any person who—

(i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;

(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

(iii) *knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;*

(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

(v)(I) engages in any conspiracy to commit any of the preceding acts, or

(II) aids or abets the commission of any of the preceding acts,

shall be punished as provided in subparagraph (B).

8 U.S.C. §§ 1324(a)(1)(A)(i), (ii), (iii), (iv) and (v) (italics added). Patel pled guilty to harboring an alien, in violation of INA § 274(a)(1)(A)(iii)—the italicized portion of § 274(a)(1)(A) set forth above. INA § 241(a)(2)(A)(iii) provides: "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[4] 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is defined to include:

an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title *(relating to alien smuggling)*, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child or parent (and no other individual) to violate a provision of this chapter.

8 U.S.C. § 1101(a)(43)(N) (italics added).

Patel's challenge to the Immigration Judge's ruling is rather literal. He focuses on the statute's reference to alien "smuggling" and argues that his conviction for *harboring* an alien cannot be an aggravated felony because the alien he harbored was already in this country and he (Patel) had no part in the alien's illegal admission or entry.[5] Simply put, he argues that since he was not convicted of bringing the alien into this country ("smuggling"), his conviction for "harboring" an alien already here is not an aggravated felony.

---

**4.** Congress has replaced the term "deportation" with "removal." *See* Omnibus Appropriations Act of 1997, Pub.L. No. 104–208, div. C, § 308, 1996 U.S.C.C.A.N. (110 Stat.) 3009–620, 3009–621. However, the change in nomenclature has yet to make its way into all of the existing sections of the United States Code.

**5.** The government does not dispute Patel's claim that he had no part in the alien's illegal entry to the United States.

We disagree. We believe that the parenthetical: "relating to alien smuggling" in INA § 101(a)(43)(N), is descriptive and not restrictive. The phrase is nothing more than a shorthand description of all of the offenses listed in INA § 274(a)(1)(A). Congress did not intend it to be a substantive restriction limiting which of the several offenses specified in § 274(a)(1)(A) applies to § 101(a)(43)(N). Consequently, the offense of harboring an alien in violation of INA § 274(a)(1)(A)(iii) is an aggravated felony rendering Patel removable.

This reading of the statute is consistent with that of every appellate court that has considered this issue. *See Gavilan–Cuate v. Yetter,* 276 F.3d 418 (8th Cir.2002); *Castro–Espinosa v. Ashcroft,* 257 F.3d 1130 (9th Cir.2001); *United States v. Galindo–Gallegos,* 244 F.3d 728 (9th Cir.2001); *United States v. Salas–Mendoza,* 237 F.3d 1246 (10th Cir.2001); *Ruiz–Romero v. Reno,* 205 F.3d 837 (5th Cir.2000); *United States v. Monjaras–Castaneda,* 190 F.3d 326 (5th Cir.1999). We realize that not all of these cases involved petitions for review of removal orders. *Galindo–Gallegos, Salas–Mendoza,* and *Monjaras–Castaneda* concerned the interpretation of the Sentencing Guidelines. However, those cases are nevertheless relevant to our inquiry.

Section 2L1.2(b)(1)(A) of the Guidelines is entitled: "Unlawfully Entering or Re-

maining in the United States," and provides for a 16 level increase in the applicable offense level if a defendant is convicted of illegal re-entry after a criminal conviction for an aggravated felony.[6] Application Note One to that Guideline states: an "[a]ggravated felony is defined at 8 U.S.C. § 1101(a)(43)(N)." U.S.S.G. § 2L1.2, comment, n. 1. Therefore, although the issue arises in a slightly different context when courts are presented with a petition for review of a removal order than when courts must determine the appropriate sentence under the Sentencing Guidelines, both sets of precedent address the "relating to alien smuggling" parenthetical in § 1101(a)(43)(N).

In interpreting that statute we note, as a matter of general structure and context, that Congress included a catalogue of aggravated felonies and described each by reference to criminal offenses outside the confines of the INA; *viz.,* offenses contained in titles 18, 21, 26 and 50 of the United States Code. Specifically, subparagraphs (D), (E), (H), (I), (J), (K), (L), (M), and (P) of INA § 101(a)(43) define aggravated felonies by specific reference to section numbers of the Code and then include a parenthetical setting forth the general nature of the referenced offenses.[7] This leads us to conclude that these parentheti-

---

**6.** Monjaras–Castaneda, Salas–Mendoza and Galindo–Gallegos were all deported after aggravated felony convictions for illegally transporting aliens. Thereafter, they all illegally re-entered the United States and were apprehended. After their convictions for illegal re-entry, their offense levels were enhanced by 16 points because of their prior aggravated felony convictions for illegally transporting aliens.

The issue of whether the BIA's prior determinations that the aliens' illegal transportation convictions were aggravated felonies rendering them deportable would preclude the aliens from arguing at their sentencing hearings for the subsequent illegal re-entry convic-

tions that their prior illegal transporting convictions were *not* aggravated felonies was not discussed or addressed.

**7.** INA § 101(a)(43), provides in relevant part, as follows:

(a) As used in this chapter—

    ❋     ❋     ❋     ❋     ❋     ❋

(43) The term "aggravated felony" means—

    ❋     ❋     ❋     ❋     ❋     ❋

(D) an offense described in section 1956 of Title 18 (*relating to laundering of monetary instruments*) or section 1957 of that title (*relating to engaging in monetary transactions in property derived from specific un-*

cals are intended only as a general illustration of the referenced criminal statutes. The parentheticals thus assist the reader who is attempting to determine whether a particular offense constitutes an aggravated felony. As one court of appeals has suggested:

> Section 1101(a)(43) contains a long list of aggravated felonies that it references by section number. Without any descrip-

tions of what this "litany of numbers" referred to, determining whether an offense qualified as an aggravated felony would be a long and arduous process. One would need to look up each section number in the Code to get to the right one. The parentheticals here provide an "aid to identification" only.

*Monjaras–Castaneda,* 190 F.3d at 330; *see also United States v. Salas–Mendoza,*

*lawful activity*) if the amount of the funds exceeded $10,000;

(E) an offense described in—

(i) section 842(h) or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (*relating to explosive materials offenses*);

(ii) section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of Title 18 (*relating to firearms offenses*); or

(iii) section 5861 of Title 26 (*relating to firearms offenses*);

\* \* \* \* \* \*

(H) an offense described in section 875, 876, 877, or 1202 of Title 18 (*relating to the demand for or receipt of ransom*);

(I) an offense described in section 2251, 2251A, or 2252 of Title 18 (*relating to child pornography*);

(J) an offense described in section 1962 of Title 18 (*relating to racketeer influenced corrupt organizations*), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (*relating to gambling offenses*), for which a sentence of one year imprisonment or more may be imposed;

(K) an offense that—

(i) relates to the owning, controlling, managing, or supervising of a prostitution business;

(ii) is described in section 2421, 2422, or 2423 of Title 18 (*relating to transportation for the purpose of prostitution*) if committed for commercial advantage; or

(iii) is described in section 1581, 1582, 1583, 1584, 1585, or 1588 of Title 18 (*relating to peonage, slavery, and involuntary servitude*);

(L) an offense described in—

(i) section 793 (*relating to gathering or transmitting national defense information*), 798 (*relating to disclosure of classified information*), 2153 (*relating to sabotage*) or 2381 or 2382 (*relating to treason*) of Title 18;

(ii) section 421 of Title 50 (*relating to protecting the identity of undercover intelligence agents*); or

(iii) section 421 of Title 50 (*relating to protecting the identity of undercover agents*);

(M) an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

(ii) is described in section 7201 of Title 26 (*relating to tax evasion*) in which the revenue loss to the Government exceeds $10,000;

\* \* \* \* \* \*

(P) an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of Title 18, or is described in section 1546(a) of such title ((P) an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of Title 18, or is described in section 1546(a) of such title (*relating to document fraud*) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter;) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter;....

8 U.S.C. §§ 1101(a)(43)(D), (E), (H), (I), (J), (K), (L), (M) and (P) (italics added).

237 F.3d at 1247 ("Section 1101(a)(43) contains a long list of aggravated felonies referenced by section number. Without any descriptions of what the section numbers refer to, determining whether an offense qualifies as an aggravated felony would be a laborious process."); *Galindo–Gallegos*, 244 F.3d at 734 ("The function of the descriptive language appears to be to make reading the statute easier, so that one does not have to look up each citation to see what it is about, and to protect against scrivener's error in getting the statute from the drafting desk to the United States Code.").

Moreover, this interpretation of the statute is corroborated by the fact that other subsections have parentheticals that are expressly restrictive or limiting. For example, INA § 101(a)(43)(F), defines an aggravated felony as "a crime of violence (as defined in section 16 of title 18, *but not including a purely political offense*) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (italics added). Similarly, INA § 101(a)(43)(J), defines an aggravated felony as "an offense described in [18 U.S.C. § 1962] (relating to racketeer influenced corrupt organizations), or an offense described in [18 U.S.C. § 1084] (*if* it is a second or subsequent offense)." 8 U.S.C. § 1101(a)(43)(J) (italics added). Such parentheticals clearly establish that Congress used restrictive or limiting language where it intended a parenthetical to limit or refine a given provision.

With this general structure and context in mind, we turn to the specific provision at issue here. As noted above, INA § 101(a)(43)(N) defines an aggravated felony as

> an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (*relating to alien smuggling*), except in the case of a first offense for which the

alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child or parent (and no other individual) to violate a provision of this chapter.

8 U.S.C. § 1101(a)(43)(N) (italics added). Perhaps the most compelling reason to find that the "relating to alien smuggling" parenthetical is descriptive and not limiting is (as the Court of Appeals for the Fifth Circuit has noted) that "conventional rules of grammar" demonstrate "that the parenthetical, 'relating to alien smuggling' refers to 'paragraph (1)(A) or (2) of section 1324(a) of this title,' not 'offense.'" *Monjaras–Castaneda*, 190 F.3d at 329 (citing 8 U.S.C. § 1101(a)(43)(N)). The parenthetical "relating to alien smuggling" is contained in the prepositional phrase beginning: "in ...." "[P]aragraph" is the subject of that phrase and, therefore, it clearly refers to "paragraph (1)(A) or (2) of section 1324(a) of this title." *Id.* If the parenthetical were intended to be restrictive, it would have been placed directly after the word "offense." The statute would then read: "an offense (relating to alien smuggling) described in paragraph (1)(A) or (2) of section 1324(a)." *Id.* That wording would be consistent with Patel's claim. However, that is not what Congress did, that is not what the statute says, and we can not amend the statute in that manner. Yet, accepting Patel's argument would result in just such a judicial amendment of the statute.

We also note that "smuggling" does not appear anywhere in the text of INA § 274(a)(1)(A). This underscores the fact that insertion of the "relating to alien smuggling" parenthetical in INA § 101(a)(43)(N) simply reflects the wide range of illegal activities Congress has subsumed under the rubric of "alien smuggling" proscribed in § 274(a)(1). The legislative history of § 274(a)(1) "exhibits

Congress' continuing efforts to strengthen federal anti-smuggling law *by broadening the scope of proscribed conduct." United States v. Sanchez–Vargas*, 878 F.2d 1163, 1169 (9th Cir.1989) (italics added).

> [F]rom its genesis as a statute prohibiting only the bringing in of aliens, [INA § 274(a)(1)] *now presents a single comprehensive "definition" of the federal crime of alien smuggling—*one which tracks smuggling and related activities from their earliest manifestations (inducing illegal entry and bringing in aliens) to continued operation and *presence within the United States* (transporting and *harboring or concealing aliens*).

*Id.* (italics added).[8]

## III. CONCLUSION

In sum, we find that the parenthetical "relates to alien smuggling" in INA § 101(a)(43)(N) is descriptive of all of the offenses contained in INA § 274(a)(1)(A), including the offense of harboring an alien in violation of INA § 274(a)(1)(A)(iii). Therefore, Patel's conviction for harboring

an alien meets the definition of an aggravated felony under INA § 101(a)(43)(N). Consequently, we must dismiss his petition for review because we lack jurisdiction under INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).[9]

8. Finally, we think it obvious that even the nontechnical offense of "harboring an alien" does *relate* to alien smuggling. Harboring an alien requires, as one of its elements, that an offender know or have reckless disregard of the fact that "an alien has come to, entered, or remains in the United States in violation of law." Therefore, the offender must know or recklessly ignore the possibility of the alien's illegal presence here. Consequently, with the possible exception of an alien in this country on an expired visa, harboring an alien "relates to alien smuggling" in some way. *See Galindo–Gallegos*, 244 F.3d at 733–734.

9. Patel makes two additional, yet related, arguments that require little discussion. First, he claims that a construction of the parenthetical as descriptive rather than limiting "is significantly different from the plain meaning of the language [of § 101(a)(43)(N)], fail[ing] to give aliens sufficiently clear notice as to what behavior would subject them to the dra-

conian effects of classification as an aggravated felon." Patel's Br. at 11. However, reading the parenthetical as descriptive is not significantly different from the plain language of the statute. On the contrary, as we have explained above, that is the only way to read it. Second, Patel suggests, albeit without using the term, that the rule of lenity should apply and, therefore, his conviction should not be determined to be an aggravated felony. The function of the rule of lenity is to protect people "from the unfair application of ambiguous punitive statutes." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 525, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (Stevens, J., dissenting). The rule only applies if there is a "grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). INA § 101(a)(43)(N) is not ambiguous or uncertain, let alone grievously so. Thus, we summarily reject these arguments.