

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-6-2007

# Nyakatura v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3204

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Nyakatura v. Atty Gen USA" (2007). *2007 Decisions.* Paper 132.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/132

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-3204
_____

ANDREW NYAKATURA,
Petitioner

v.

ATTORNEY GENERAL USA,
Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A76-400-066)
Immigration Judge: Hon. Walter A. Durling
_____

Argued November 8, 2007

Before: SCIRICA, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*

(Filed: December 6, 2007)
_____

Daniel M. Pell   [ARGUED]
2550 Kingston Road
Suite 305
York, PA 17402-0000
      *Counsel for Petitioner*

Richard M. Evans
Peter D. Keisler
Annette M. Wietecha  [ARGUED]
Mary Jane Candaux
Susan K. Houser
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044-0000
      *Counsel for Respondent*

————————————

OPINION OF THE COURT

————————————

JORDAN, *Circuit Judge.*

Andrew Nyakatura ("Nyakatura") petitions for review of a Final Order of Removal

entered by the Board of Immigration Appeals ("BIA") on June 1, 2006.  For the following

reasons, we will deny the petition.

## I.      BACKGROUND

### A.      Nyakatura's Criminal Conviction

Nyakatura, a native and citizen of Uganda, was admitted to the United States as a

nonimmigrant in March 1991 and adjusted his status to lawful permanent resident on

May 28, 1998.  On August 22, 2001, he and a co-defendant, Luther White, were indicted

for bribery and money laundering in connection with Nyakatura's misuse of his position

as Controller and Chief Financial Officer of KCMC Child Development Corporation

("KCMC"), located in Kansas City, Missouri.

The indictment stated that, from 1998 to 2001, KCMC received grants of federal funds in excess of $10,000 from the U.S. Department of Health and Human Services ("HHS"), under the Head Start and Early Head Start Programs. White owned and operated D&H Realty and Development ("D&H"). Between September 1997 and March 2000, Nyakatura paid D&H approximately $1.1 million, supposedly for the renovation of various child care centers operated by KCMC. The checks paid to D&H were drawn from the KCMC Head Start operating account, into which federal grant money from HHS was regularly deposited. Nyakatura and White submitted fraudulent invoices to KCMC to make it appear as though D&H performed work and purchased construction materials, when in fact it had not. White then paid over $200,000 in monetary kickbacks to Nyakatura for providing those fraudulent payments to D&H.

On February 21, 2002, Nyakatura pled guilty to Counts Three and Six of the indictment. Count Three, for bribery concerning a program receiving federal funds under 18 U.S.C. § 666(a)(1)(B), alleged that Nyakatura, as an agent of KCMC, corruptly accepted and agreed to accept over $200,000 in monetary kickbacks from White, intending to be influenced and rewarded by those payments. Count Six, for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), alleged that Nyakatura conducted a financial transaction affecting interstate commerce, namely the purchase of a cashier's check in the amount of $8,500, and that the check represented the proceeds of fraudulent activity concerning programs receiving federal funds.

Nyakatura was sentenced to a prison term of 51 months on each count, with the sentences to run concurrently.  He was also ordered to pay restitution of over $885,000 to KCMC.

**B.     The Removal Proceedings**

Removal proceedings were instituted against Nyakatura on March 31, 2004. The Notice to Appear charged him with removability as an aggravated felon for money laundering in excess of $10,000, pursuant to INA § 101(a)(43)(D), 8 U.S.C. § 1101(a)(43)(D), and for committing within five years of admission, a crime involving moral turpitude ("CIMT"), for which a sentence of one year or longer may be imposed.

*1.     Nyakatura's Motion to Terminate Proceedings*

Nyakatura moved to terminate the removal proceedings.  He argued that his conviction for money laundering was not an aggravated felony, and he also argued that he did not commit a CIMT within five years of admission to the United States, asserting that he was admitted on March 10, 1991, while his conviction date was August 20, 2002.

*2.     The Immigration Judge's Interlocutory Opinion*

The IJ issued an interlocutory ruling on April 15, 2002, holding that Nyakatura's conviction for money laundering was a CIMT, and that it occurred within five years of 1998, when Nyakatura's status was adjusted to lawful permanent resident.  The IJ also held that the conviction for money laundering was not an aggravated felony because the Presentencing Investigative Report ("PSR") had been impermissibly used to support the aggravated felony determination.

4

### 3. Nyakatura's Application for Cancellation of Removal and the Addition of a New Charge to the Notice to Appear

Nyakatura submitted an application for cancellation of removal on April 27, 2005, and a hearing was scheduled for August 9, 2005. On the day of the hearing, the government issued a Form I-261, adding an additional charge of removability, asserting that, after his admission, Nyakatura was convicted of an aggravated felony as defined in INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R), specifically an offense relating to commercial bribery for which the term of imprisonment is at least one year.

Nyakatura objected, claiming that it was too late for the government to add charges. Consistent with 8 C.F.R. § 1240.10(e), the IJ held that "since the case is not over, the Government can proceed with additional charges." (Appx. 194; *see also* 8 C.F.R. § 1240.10(e).)

### 4. The IJ's Opinion and Order of Removal

The IJ issued an opinion holding that Nyakatura was not eligible for cancellation of removal because he had committed a CIMT within five years of the date of his admission. The IJ also issued an order of removal, holding that Nyakatura's conviction for bribery constitutes a conviction relating to commercial bribery as set forth in the aggravated felony definition in INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R). In doing so, the IJ adopted the government's reasoning as his own. The IJ went on to hold that Nyakatura was ineligible for all forms of discretionary relief and ordered him removed to Uganda.

5

**C.      Nyakatura's First Appeal to the BIA and the IJ's Opinion on Remand**

Nyakatura appealed to the BIA, arguing that his conviction for bribery did not constitute an offense relating to commercial bribery, and that the addition of a new charge on the eve of his hearing violated his right to due process.  The BIA held that it was improper for the IJ to incorporate by reference the government's reasoning on the issue of commercial bribery and so it remanded the case for a full opinion.

Following remand, the IJ's opinion set forth his reasons for holding that Nyakatura's conviction for bribery was a crime relating to commercial bribery.  Applying the formal categorical approach, the IJ held that the common law definition of commercial bribery is an offense of bribing an employee, servant, or agent, with the intent to influence him in his relation to his employer, master, or principal.  The IJ noted that Nyakatura, as an agent for KCMC, received certain bribes that were given with an intent to influence or reward him for his cooperation.  The IJ also held that by using the term "relating to" commercial bribery, Congress intended section 101(a)(43)(R) to be broad in scope.  He concluded that the term "relating to" was expansive and covered a broad range of activities beyond those strictly pertaining to commercial bribery.  The IJ then held that even if Nyakatura's conviction was not strictly "commercial bribery", it was nonetheless sufficiently "related to" commercial bribery that the government had met its burden of proving by clear and convincing evidence that Nyakatura was convicted of an aggravated felony.

**D.      The Second Appeal Before the BIA**

The BIA dismissed Nyakatura's second appeal, holding that his conviction for bribery constitutes a CIMT subjecting him to removal. The BIA also agreed with the IJ's holding that what Nyakatura had done amounts to an aggravated felony, because it "relat[es] to commercial bribery" and the term of imprisonment was at least one year. Finally, the BIA agreed that having been convicted of an aggravated felony made Nyakatura ineligible for a waiver and thus ineligible for adjustment of status.

## II      JURISDICTION AND STANDARD OF REVIEW

The IJ had jurisdiction over the removal proceedings pursuant to 8 C.F.R. §§ 1003.10 and 1003.14(a). The BIA had jurisdiction over Nyakatura's appeal pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction over Nyakatura's petition pursuant to 8 U.S.C. §§ 1252(a)(2)(C) and (D). We review *de novo* the IJ's and the BIA's interpretation of the law, including the question of whether a particular crime falls within the definition of an aggravated felony under INA § 101(a)(43), 8 U.S.C. § 1101(a)(43).[1] *Park v. Attorney General*, 476 F.3d 66, 70 (3d Cir. 2006).

## III.    DISCUSSION

_____

[1]The statute provides that an aggravated felony includes:

> an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year ... .

8 U.S.C. § 1101(a)(43)(R).

7

Nyakatura petitions for review of the Final Order of Removal entered by the BIA on June 1, 2006. On appeal, he argues that his conviction for bribery is not an offense "relating to" commercial bribery and therefore does not constitute an aggravated felony subjecting him to removal. Nyakatura also argues that his due process rights were violated when the government added an additional basis for removal approximately sixteen months after the removal proceedings began.

**A.    Nyakatura's Conviction for Bribery Constitutes "An Offense Relating To Commercial Bribery"**

Nyakatura argues that he did not actually engage in bribery or crimes "relating to" bribery. Rather, he says, his crime was "theft pure and simple." (Petitioner's Brief at 18.)  He also urges us to forego the traditional formal categorical approach and adopt a modified categorical approach in assessing whether his crime is an aggravated felony. He believes we should inquire into the facts underlying his conviction because, in his view, 18 U.S.C. § 666(a)(1)(B) is set forth in the disjunctive. Finally, he argues that his crime does not relate to commercial bribery because "the transaction itself relates to theft by deception through concealment" while commercial bribery "involves getting KCMC to approve a contract[] or payment[]." (Petitioner's Brief at 21.)

The government responds that 18 U.S.C. § 666(a)(1)(B) is not set forth in the disjunctive, and that we should apply the formal categorical approach, looking to the statutory elements of the offense rather than the particular facts underlying Nyakatura's conviction.

8

Nyakatura pled guilty to bribery pursuant to 18 U.S.C. § 666(a)(1)(B), which

provides:

> (a) Whoever, if the circumstance described in subsection (b)[2] of this section
> exists –
> (1) being an agent of an organization, or of a State, local, or Indian tribal
> government, or any agency thereof ...
> (B) corruptly solicits or demands for the benefit of any person, or accepts or
> agrees to accept, anything of value from any person, intending to be
> influenced or rewarded in connection with any business, transaction, or
> series of transactions of such organization, government, or agency
> involving any thing of value of $ 5,000 or more ... [shall be fined and/or
> imprisoned].

18 U.S.C. § 666(a)(1)(B).

As a threshold matter, the parties agree that Congress did not define "commercial

bribery" in INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R), and that the legislative

history provides no guidance for construing what it means. Therefore, we look to the

common law to determine its meaning. *See Drakes v. Zimski*, 240 F.3d 246, 249 (3d Cir.

2001). ("Where federal criminal statutes use words of established meaning without

further elaboration, courts typically give those terms their common law definition."). The

parties agree that, under common law, commercial bribery is "the offense of bribing an

employee, servant, or agent with the intent to influence him in his relation to his

---

[2]Subsection (b) states: "The circumstance referred to in subsection (a) of this section is
that the organization, government, or agency receives, in any one year period, benefits in
excess of $ 10,000 under a Federal program involving a grant, contract, subsidy, loan,
guarantee, insurance, or other form of Federal assistance."

18 U.S.C. § 666(b).

employer, master or principal."[3]  (Petitioner's Brief at 17; Respondent's Brief at 18 (both citing 1 A.L.R. 3d at § 1(a)).)

Nyakatura argues that, because his statute of conviction is set forth in the disjunctive as to *mens rea*, we should apply a modified categorical approach and examine the facts underlying his conviction.  But this is not the type of case in which we have taken such an approach.  An example of when applying that approach is appropriate is *Valansi v. Ashcroft*, 278 F.3d 203 (3d Cir. 2002), which we described in *Singh v. Ashcroft*, 383 F.3d 144 (3d Cir. 2004):

> There, the statute of conviction was phrased in the disjunctive-a *mens rea* of *either* intent to defraud *or* intent to injure would suffice for conviction-which, in our view, called for an exploration of which of the alternative elements was the actual basis for conviction. Statutes phrased in the disjunctive are akin to, and can be readily converted to, statutes structured in outline form, with a series of numbered or letter elements ... . Such statutes may sometimes more clearly invite further inquiry into exactly which subsection the defendant violated.

*Singh*,  383 F.3d at 162 (citing *Valansi*, 278 F.3d at 210-11).

The conviction at issue in *Valansi* was for embezzlement pursuant to 18 U.S.C. § 656, which requires the government to prove "(1) the defendant was an employee, (2) of a federally connected bank, (3) who took cash or other assets, (4) in the custody or care of the bank, (5) with the intent to injure or defraud the bank."  *Id.* at 210.  We held that

---

[3]Commercial bribery is also defined as "the knowing solicitation or acceptance of a benefit in exchange for violating an oath of fidelity, such as that owed by an employee, partner, trustee or attorney."  Black's Law Dictionary (8th ed. 2004.)

the *mens rea* element under that statute was in the disjunctive, because it could be proven

by either intent to injure or intent to defraud. *Id.* at 211. Thus, the statute invited inquiry

into the underlying facts, because

> some but not all convictions under 18 U.S.C. § 656 qualify as aggravated
> felonies ... . A conviction establishing that the defendant acted with the
> intent to defraud his or her employer qualifies as an offense that involves
> fraud or deceit, and therefore as an aggravated felony. A conviction
> establishing that the defendant acted only with an intent to injure his or her
> employer does not.

*Id.*

In this case, however, Nyakatura pled guilty to bribery pursuant to section

666(a)(1)(B), which is not phrased in the disjunctive as to *mens rea* in a manner similar to

the embezzlement statute cited in *Valansi.* Section 666(a)(1)(B) states that a person is

guilty of bribery if he accepts anything of value "intending to be influenced or rewarded

... ." 18 U.S.C. § 666(a)(1)(B). Whether Nyakatura intended to be influenced or intended

to be rewarded[4] would not change the fact that the offense is "related to" commercial

bribery, and thus constitutes an aggravated felony, whereas in *Valansi* the difference

between intent to defraud and intent to injure was critical to whether the offense

constituted an aggravated felony.

---

[4]Nyakatura pled guilty to Count Three of the indictment, which states that he intended "to be influenced and rewarded ... ." This further undermines his argument that we should adopt the modified categorical approach, since he pled guilty to both types of intent enumerated in the statute, thus making any distinction between the two inconsequential.

Nyakatura also argues that a modified categorical approach must be taken because the statute under which he was convicted is distinct from the common law definition of commercial bribery. Recalling that common law commercial bribery involves bribery with the intent to influence an employee in his relation to his employer, Nyakatura points out that 18 U.S.C. 666(a)(1)(B) provides that a person is guilty of bribery merely if "he accepts anything of value intending to be rewarded." He then argues that, since no effect on the employer/principal relationship need occur under § 666(a)(1)(B), "inquiry into the facts is invited by the statute of conviction." (Petitioner's Brief at 20.)

Whether that argument has any logical merit is of no practical consequence in this case. Assuming without deciding that a modified categorical approach is proper, we conclude that, under these circumstances, a kickback is a bribe and that Nyakatura's receipt of kickbacks constitutes a crime relating to commercial bribery pursuant to INA § 101(a)(43)(R). By pleading guilty to Count Three of the indictment, Nyakatura admitted both that he received kickbacks of KCMC funds from White and that he concealed those transactions from other officials at KCMC by avoiding the required procedures for check issuance.

A kickback is defined as "a return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement ... Cf. BRIBERY." Black's Law Dictionary (8th ed. 2004). Bribery, in turn, is defined as "the corrupt payment, receipt, or solicitation of a private favor for official action." *Id.* We think it clear that the kickbacks at issue here were a form of bribery falling within the purview of both section 666(a)(1)(B) and

12

the common law definition of commercial bribery. Further, because INA § 101(a)(43)(R) includes the phrase "relating to" to broaden the scope of the statute beyond a strict construction of commercial bribery, it is no stretch to conclude that bribery under section 666(a)(1)(B) falls within "the wide sweep of offenses described in [INA § 101(a)(43)(R)]." *Singh*, 383 F.3d at 158 (citing *Drakes*, 240 F.3d at 250). Because Nyakatura's conviction for bribery under section 666(a)(1)(B) is an offense relating to commercial bribery, it is an aggravated felony subjecting him to removal.

### B. Nyakatura's Due Process Arguments Fail

Nyakatura argues that his right to due process was violated when the IJ permitted the government to add an additional charge of removability to its case against him sixteen months after the proceedings began.

On August 9, 2005, the government added the charge of removability based on Nyakatura's conviction of an aggravated felony. As the government correctly points out, it is permitted to lodge additional charges in removal proceedings at any time. *See* 8 C.F.R. § 1240.10(e) ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability may be lodged by the Service in writing."). While the IJ indicated his displeasure at the late addition of the new charge, he also recognized that "since the case is not over, the Government can proceed with additional charges." (Appx. at 194.) The government was, therefore, properly permitted to add the new charge.

Nyakatura's substantive due process argument must fail because there is no substantive due process right not to be removed from the United States. *See Hernandez v. Gonzales*, 437 F.3d 341, 345 (3d Cir. 2006) ("Aliens who seek only discretionary relief from deportation have no constitutional right to receive that relief"); *Pinho v. INS*, 249 F.3d 183, 189 (3d Cir. 2001) (suspension of deportation is discretionary relief that does not impair any vested rights and does not give rise to due process violations). His procedural due process argument also fails because he was not prejudiced by the government's addition of the charge for an aggravated felony. As the IJ stated:

> [T]here's really no prejudice to [Nyakatura] ... I believe we need to inquire into this matter in relation to the additional ground of removal. So, since you were served with this today ... all I can suggest is that we just hold the case and you can have a look at it and submit a brief if you'd like in this regard ... .

(Appx. at 195-96.) The IJ gave Nyakatura fifty-one days to respond to the new charges. Nyakatura submitted a brief on the issue and the IJ considered his arguments before rejecting them. Therefore, Nyakatura's due process arguments are unpersuasive.

## IV.  CONCLUSION

For the foregoing reasons, Nyakatura's petition for review will be denied.