

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2004

# Sylla v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2598

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sylla v. Atty Gen USA" (2004). *2004 Decisions.* Paper 602.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/602

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

NO. 03-2598

_____

SAMBOU SYLLA,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On Petition for Review of an order
of the Board of Immigration Appeals
(A29-851-683)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 28, 2004

Before: SCIRICA, Chief Judge, FISHER, and ALARCÓN[*], Circuit Judges

(Filed: June 9, 2004)

_____

OPINION OF THE COURT

ALARCÓN, Circuit Judge.

_____

[*] Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

Petitioner Sambou Sylla, a native of Mali, appeals from an order of the Board of Immigration Appeals ("BIA") denying his application for asylum under 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3)(A), withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, art. 3, S. Treaty Doc. No. 100- 20 (1988), 1465 U.N.T.S. 85 (entered into force June 26, 1987), and voluntary departure. We hold that the government presented sufficient evidence of changed country conditions to rebut any presumption of a well-founded fear of future persecution based on past persecution. We also conclude that Mr. Sylla has not established that it is more likely than not that he would be subject to torture if he returned to Mali. We do not have jurisdiction to consider Mr. Sylla's claim requesting voluntary departure.

I

Mr. Sylla is a black Tuareg who was raised in the Tuareg region of Mali. He fled Mali in 1989 to Niger after allegedly being kidnaped and forced into a labor camp by a white Tuareg rebel band. He entered the United States from Niger on or about May 12, 1990, pursuant to a non-immigrant B-1 visa. On June 2, 1998, the Immigration and Naturalization Service ("INS")[1] issued a notice to appear to Mr. Sylla, charging him with

_____

[1] In March 2003, the Department of Justice transferred the functions of the INS to the newly created Department of Homeland Security. See Homeland Security Act of 2002. Pub.L. No. 107-296 § 471, 116 Stat. 2135 (2002). Because Mr. Sylla filed his petition for review prior to 2003, we refer to the INS, rather than to the Department of Homeland Security.

being removable from the United States after he had remained in this country longer than permitted by his non-immigrant visa.

Mr. Sylla appeared before an Immigration Judge ("IJ") on September 3, 1998 for removal proceedings. Mr. Sylla admitted the allegations in the notice to appear and conceded removability. At the hearing, Mr. Sylla applied for asylum, withholding of removal and relief under the Convention Against Torture, and in the alternative, he requested voluntary departure. The IJ designated Mali as the country of removal.

Proceedings on Mr. Sylla's application to remain in the United States were conducted on August 4, 2000. Mr. Sylla testified that he worked on his family's land in Gao as a camel herder until 1988, when violence broke out nearby. In January 1989, a group of white Tuareg rebels, in revolt against the Malian government, took all of the Sylla family camels and kidnaped him. The rebel band brought him to a settlement located 10 kilometers from his home in Gao and forced him to care for the camels in the camp.

Four months later, the Malian army raided the Tuareg camp, killing both black and white Tuaregs. Mr. Sylla testified that during the attack he was brutally beaten and stabbed by members of the Malian army. Mr. Sylla presented evidence from a 1999 medical exam performed in the United States that confirmed that his injuries were consistent with knife wounds.

Shortly after the attack, Mr. Sylla fled from Mali to Niger in 1989. Mr. Sylla's

parents also fled to Niger in 1992, his sisters to Niger and Gabon, and a brother to France. No member of his family has returned to Mali.

In response to Mr. Sylla's testimony, the Government offered the United States Department of State Country Report on Mali for 1997, 1998, and 1999 to demonstrate that conditions in Mali have changed since 1989. The Reports indicated a significant improvement in relations between the Malian Government and the Tuareg ethnic groups since 1989. The 1997 Report noted that "[t]he UNHCR [United Nations High Commissioner for Refugees] successfully completed the repatriation of Malian refugees displaced by the Tuareg rebellions of the early 1990's."

The IJ found that Mr. Sylla's testimony was not credible, and denied his petition on that basis. "Assuming arguendo that [Mr. Sylla] had been credible," the IJ found in the alternative that Mr. Sylla was not subjected to past persecution on account of any of the grounds listed in 8 U.S.C. § 1101(a)(42),[2] and that he had not demonstrated a well-founded fear of future persecution because country conditions have changed in Mali. Having denied Mr. Sylla's application for asylum, the IJ also denied relief under the more stringent standards for withholding of removal and the Convention Against Torture. The IJ also found that Mr. Sylla was not entitled to voluntary departure.

---

[2] 8 U.S.C. § 1101(a)(42) provides, in relevant part, that a "refugee" is defined as: "any person . . . unable or unwilling to return to . . . [his or her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ."

4

Mr. Sylla filed a timely notice of appeal of the IJ's decision with the BIA. The BIA affirmed the decision of the IJ without opinion pursuant to 8 C.F.R. § 3.1(a)(7) (redesignated as 8 C.F.R. § 1003.1(a)(7) (2003)). We have jurisdiction over this timely-filed petition for review.

## II

### A.

Mr. Sylla first contends that the BIA's practice of affirmance without opinion and use of streamlining regulations violates the fundamental rules of administrative law by failing to provide him with a reasoned explanation of the agency's final decision. This court reviews de novo pure questions of law. Patel v. Ashcroft, 294 F.3d 465, 467 (3d Cir. 2002).

This court recently rejected a similar argument in Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc). In Dia, the petitioner also challenged the BIA's administrative practice of affirming the decisions of IJ's without opinion. Id. at 234. This court stated in Dia that the INA "left all procedural aspects of the BIA, especially how it hears cases, entirely to the Attorney General's discretion." Id. at 237. This court concluded in Dia that "in promulgating the streamlining regulations, the Attorney General did not run afoul of the INA." Id. at 238. Accordingly, under the law of this circuit, Mr. Sylla's administrative challenge is without merit. Id.

### B.

Mr. Sylla also contends that the affirmance of the IJ's order without opinion was an abuse of discretion, and violated his right to due process, by failing to provide this court with an explanation of the reasoning behind the BIA's decision so that we can conduct an individualized and meaningful review of the agency's actions. This court reviews de novo whether the BIA violated a petitioner's due process rights. Chong v. District Director, INS, 264 F.3d 378, (3d Cir. 2001). This question was resolved in Dia. In that matter, this court stated "[a]ll that is required for our meaningful review is that the agency–as represented by an opinion of the BIA or IJ–put forth a sufficiently reasoned opinion." Dia, 353 F.3d at 243. In denying Mr. Sylla's application, the IJ set forth a sufficiently reasoned opinion. "While in many instances knowing the BIA's reasoning might prove helpful to our review, the BIA's failure to express it does not amount to a constitutional violation." Id.

### III

Mr. Sylla also challenges the IJ's decision on the merits, contending that his petition for review should be granted because substantial evidence does not support the IJ's finding that his testimony was not credible. Mr. Sylla alleges that he was subject to past persecution in Mali because of his membership in the black Tuareg group. Pet'r Op. Brief at 22. Mr. Sylla also contends that he fears persecution if he is returned to Mali based on the severity of his past persecution. We review the BIA's decision that an alien has not established eligibility for asylum to determine whether it is supported by

substantial evidence. Xie v. Ashcroft, 359 F.3d 239, 246 (3d Cir. 2004). Where the BIA has adopted the IJ's reasoning without opinion, this court also reviews the IJ's decision under the same standard. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003). The substantial evidence standard requires this court to grant a petition only if the evidence in the record is so strong that it compels a contrary conclusion. Ahmed v. Ashcroft, 341 F.3d 214, 216 (3d Cir. 2003).

After reviewing the record, we conclude that the IJ's adverse credibility determinations were not supported by substantial evidence. The IJ based his adverse credibility determination on speculation, personal belief, and impermissible inferences. For example, the IJ commented that Mr. Sylla's testimony that his father did not resist his kidnappers in the face of their guns "is not particularly plausible to the Court insofar as the Court would at least expect a father to protest in some fashion, not withstanding [sic] the fact that the kidnapers had guns, the fact that they were taking his son." "Adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

In addition, the IJ emphasized inconsistencies in Mr. Sylla's testimony that were minor and likely based on misunderstanding, as opposed to any genuine inconsistency in Mr. Sylla's testimony. For example, the IJ made much of the fact that Mr. Sylla first testified that he worked as a camel herder and then later spoke of his work on a farm. The IJ commented that "the respondent's affidavit reflects that his (sic) spent most of

7

time as a camel herder which does not comport with him telling me that he was a farmer." This court stated in Gao that "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding. The discrepancies must involve the heart of the asylum claim." Gao, 299 F. 3d at 272 (internal citations omitted). Whether Mr. Sylla worked as a camel herder or a farmer does not go to the heart of his claim of persecution at the hands of white Tuaregs. It is also plausible that a camel herder would refer to his job site as a camel "farm." In either case, the IJ's adverse credibility finding is not supported by substantial evidence.

IV

A.

Because the IJ made findings in the alternative, we review those findings for substantial evidence. See Guo v. Ashcroft, 361 F.3d 1194, (9th Cir. 2004) (holding that where an appellate court determines that an adverse credibility finding is not supported by substantial evidence, and the IJ or BIA has made a finding in the alternative as to the petitioner's eligibility for asylum, the appellate court is *not* required to remand the case to the agency, but may properly review the factual findings in the first instance). We need not, however, determine whether Mr. Sylla presented substantial evidence that he was subjected to past persecution in Mali on account of his ethnic group because the IJ determined that the Government established by a preponderance of the evidence that

8

conditions in Mali have changed since Mr. Sylla left in 1989. The IJ found that his fear of future persecution is no longer reasonable. See 8 C.F.R. § 208.13(b)(1) (a showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution); see also Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003) ("That presumption can be rebutted if the INS establishes by a preponderance of the evidence that the applicant could reasonably avoid persecution by relocating to another part of his or her country or that conditions in the applicant's country have changed so as to make his or her fear no longer reasonable.").

The Country Reports from 1997, 1998, and 1999 indicate that conditions in Mali have improved following various peace agreements in 1995, including an integration of Tuareg rebel forces into the Malian army. Dr. Smith testified that "[a]s of 1995, there has been a treaty [between the Tuaregs and the Malian government] in place that has large[ly] been respected." The IJ's determination that the Government had established by a preponderance of the evidence that country conditions have changed in Mali such that Mr. Sylla's fear of future persecution is no longer reasonable is supported by substantial evidence. The IJ also correctly noted that because Mr. Sylla failed to demonstrate a reasonable probability of future persecution, he does not meet the more stringent standard required for withholding of deportation. See Mulanga, 349 F.3d at 132 ("[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution

9

standard for withholding of removal").

## B.

With respect to Mr. Sylla's claim under the Convention Against Torture, the IJ found that "based on the respondent's testimony and evidence in the record . . . respondent has not shown that he is more likely than not to be tortured if he is removed to Mali." "In order to obtain relief under the Convention Against Torture, an applicant must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Mulanga, 349 F.3d at 132-33 (internal citations omitted). Because conditions have changed in Mail since 1989, Mr. Sylla has failed to demonstrate that he is more likely that not to be tortured if he is removed to that country. The IJ's determination that Mr. Sylla had not established eligibility for relief under the Convention Against Torture is supported by substantial evidence. See Tarrawally v. Ashcroft, 338 F.3d 180, 182 (3d Cir. 2003) (holding that the IJ's finding that petitioner was not likely to be tortured was supported by substantial evidence where petitioner introduced no evidence to support either the fact that the government of Sierra Leone detains individuals re-entering the country, or the fact that the country presumes such individuals to be its opponents).

## C.

With respect to Mr. Sylla's request for voluntary departure pursuant to § 1229c(b), this court lacks jurisdiction to consider his claim. In IIRIRA, Congress provided that

10

"[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section, nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure."  8 U.S.C. § 1229c(f); see also 8 U.S.C. §§ 1252(a)(2)(B)(i) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229c . . .of this title"); Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1166 (9th Cir. 2004) (holding that the court of appeals lacked jurisdiction to review denials of voluntary departure, including statutory eligibility for voluntary departure pursuant to §§ 1252(a)(2)(B)(i) and 1229c(f)).

For the foregoing reasons, we deny the petition for review.