**IMG-168**                                                                **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4383
_____

RENATO MANUEL DA COSTA PONTA-GARCIA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A035 248 950)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 21, 2011

Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges.

(Filed: July 22, 2011)
_____

OPINION
_____

PER CURIAM

Renato Manuel Da Costa Ponta-Garcia petitions for review of an order of the

Board of Immigration Appeals ("BIA" or "Board") that dismissed his appeal from an

Immigration Judge's ("IJ") removal order. For the reasons that follow, we will deny the petition for review.

I.

Ponta-Garcia is a native and citizen of Portugal. His parents brought him to the United States in 1978 at the age of nine as a lawful permanent resident. The family soon thereafter went to Bermuda for several years and then returned, apparently on visitors' visas. An IJ found the family to be removable in 1987 for overstaying their visas and granted them voluntary departure, but the family did not leave. Ponta-Garcia, apparently believing he was still a permanent resident, applied in 1990 for a "New Alien Registration Receipt Card," which was granted, and which he used several times to go to Canada and return. In 2007, he was notified that the Government intended to reinstate the twenty-year-old order of removal. An immigration officer found the order of removal was subject to reinstatement, and Ponta-Garcia filed a petition for review, challenging the regulation allowing reinstatement without a hearing before an IJ. This Court found the regulation was a reasonable construction of the statute, but remanded because it was not clear whether the 1987 removal order had been invalidated, nor was it clear that Ponta-Garcia had reentered the country illegally after his last trip to Canada. Ponta-Garcia v. Att'y Gen., 557 F.3d 158 (3d Cir. 2009).

Rather than pursue the reinstatement, the Government then issued a notice to appear ("NTA") on March 2, 2009, listing charges from § 212(a) of the Immigration and Nationality Act ("INA") (regarding inadmissibility of aliens). Ponta-Garcia objected,

2

arguing that the charges should be under § 237 (regarding removability of aliens). The IJ issued an interlocutory ruling on September 24, 2009, agreeing that because Ponta-Garcia had been admitted to the U.S. from Canada, the NTA should charge removability under § 237, rather than inadmissibility under § 212(a). A.R. 479. The IJ ordered the Government to amend the NTA, or the proceedings would be terminated. Id. However, the IJ also found Ponta-Garcia's reliance on the Government's issuance of an I-551 (evidencing lawful permanent residence) was immaterial to the resolution of the matter, and that issuance of the I-551 was purely ministerial, and conferred no status on Ponta-Garcia. A.R. 478.

The Department of Homeland Security ("DHS") issued a Form I-261, Additional Charges of Inadmissibility/Deportability on October 23, 2009, charging Ponta-Garcia, inter alia, with removability under § 237(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in INA § 101(a)(43)(D) [8 U.S.C. § 1101(a)(43)(D)]. A.R. 522-24. The IJ issued another interlocutory ruling on November 12, 2009, and sustained

the aggravated felony ground of removal.[1]  On May 13, 2010, the IJ ordered Ponta-Garcia removed to Portugal, incorporating his two earlier interlocutory decisions.[2]

On appeal, Ponta-Garcia raised the claim that the Government was estopped from refusing to recognize his status as a permanent resident, and that the IJ erred in finding him removable for having been convicted of an aggravated felony.  The BIA stated that the "apparent errors" in issuing Ponta-Garcia an I-551 and allowing him to travel to and from the United States without incident "do not prevent the government from now refusing to recognize his former lawful permanent resident status."  BIA decision at 2.

The BIA agreed with the IJ's finding that Ponta-Garcia's 2005 conviction for the offense of Conducting a Financial Transaction with the Intent to Avoid a Transaction Reporting Requirement in violation of 18 U.S.C. § 1956(a)(3)(C) was an aggravated felony.  The BIA noted that § 101(a)(43)(D) defines an aggravated felony as "an offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments) . . . if the amount of the funds exceeded $10,000."  The BIA found that because Ponta-Garcia was convicted under section 1956, there was a "categorical

---

[1] The DHS submitted another I-261, dated November 6, 2009, and charging Ponta-Garcia with removal for having been convicted of a controlled substance violation.  A.R. 520.  The IJ's decision does not mention this charge of removability.

[2] Although this decision mentions the November 6, 2009 NTA, the decision does not mention a ruling regarding Ponta-Garcia's removability for the controlled substance violation, nor does it mention the other charges of removability listed in the October 23, 2009 NTA (related to being in the United States without proper documentation, and entering or attempting to enter the United States without being admitted).

4

match," and the only question was whether the evidence established that the amount of funds exceeded $10,000. BIA decision at 3. The BIA agreed with the IJ's finding that the "Superseding indictment, which took the place of the Indictment before the respondent pled guilty," showed "laundered funds exceeding $10,000." Id. The BIA noted that the Presentence Investigation Report ("PSR") indicated that Ponta-Garcia "pled guilty to Counts I-III of the Superseding Indictment." Id.

The BIA also held that to the extent Ponta-Garcia was raising a due process challenge based on the IJ failing to "properly admit evidence into the record and fail[ing] to allow [him] to testify regarding his understanding of the plea agreement," the argument was rejected, as Ponta-Garcia had not shown how he was prejudiced by the alleged violation. Id.

Ponta-Garcia filed a timely, counseled petition for review and a motion for stay of removal. The Government filed a motion to dismiss/opposition to the stay request. The stay motion was granted, and the Government's motion to dismiss was referred to this panel.

## II.

We lack jurisdiction to consider a petition for review filed by an alien who has been convicted of an aggravated felony or certain controlled substance offenses. INA § 242(a)(2)(C) [8 U.S.C. § 1252(a)(2)(C)]. However, we can consider the jurisdictional prerequisite of whether the alien's conviction constitutes an aggravated felony, and we can also hear "constitutional claims and questions of law" (but not factual challenges)

5

even if presented by an alien convicted of an aggravated felony or controlled substance offense. Restrepo v. Att'y Gen., 617 F.3d 787, 790 (3d Cir. 2010). Ponta-Garcia argues that his § 1956 conviction is not an aggravated felony, and he also raises due process issues. We have jurisdiction to consider these claims.

Ponta-Garcia also spends much of his brief arguing that the Government should be equitably estopped "from placing him in removal proceedings, . . . since the INS conferred lawful permanent resident status on [him] on numerous occasions over a period of years," and he relied on that status. The Government argues that we do not have jurisdiction to consider this argument, which involves factual determinations. Given our holding that Ponta-Garcia's 2005 conviction constitutes an aggravated felony (see discussion below), we agree with the Government that any consideration of whether Ponta-Garcia is a legal permanent resident is rendered unnecessary, and we need not consider whether we have jurisdiction to consider any portion of Ponta-Garcia's estoppel argument.[3]

### III.

We now turn to the question of whether Ponta-Garcia's 2005 conviction is an aggravated felony. Ponta-Garcia attacks the aggravated felony finding on two fronts:

---

[3] It is not clear why Ponta-Garcia argues that he is a permanent resident. Even if he were to prevail on the argument, that would not render him non-removable. Permanent residents *are* subject to less stringent eligibility requirements for cancellation of removal, compare INA § 240A(a) [8 U.S.C. § 1229b(a)], with § 240A(b) [8 U.S.C. § 1229b(b)], but Ponta-Garcia did not apply for cancellation of removal (and an aggravated felony conviction precludes eligibility for cancellation of removal).

first, he argues that it is not clear that his conviction involved money laundering; and second, he argues that the IJ improperly consulted a Superseding Indictment and his PSR in determining that the amounts involved exceeded $10,000.

Ponta-Garcia's first argument seems to be based on his belief that INA § 101(a)(43)(D) only applies to convictions under 18 U.S.C. § 1956 if they involved money laundering. His argument fails under the reasoning of Patel v. Ashcroft, 294 F.3d 465 (3d Cir. 2002), superseded by statute on other grounds. In Patel, we held that the parenthetical in the similarly structured definition of "aggravated felony" found in INA § 101(a)(43)(N)[4] was "descriptive and not restrictive" and was "nothing more than a shorthand description of all of the offenses listed in INA § 274(a)(1)(A)." Id. at 470. The Court went on to say that:

> [A]s a matter of general structure and context, . . . Congress included a catalogue of aggravated felonies and described each by reference to criminal offenses outside the confines of the INA; *viz.*, offenses contained in titles 18, 21, 26 and 50 of the United States Code. Specifically, subparagraphs (D), (E), (H), (I), (J), (K), (L), (M), and (P) of INA § 101(a)(43) define aggravated felonies by specific reference to section numbers of the Code and then include a parenthetical setting forth the general nature of the referenced offenses. This leads us to conclude that these parentheticals are intended only as a general illustration of the referenced criminal statutes.

Id. at 470-71 (footnote omitted). We find that "(relating to laundering of monetary instruments)" in subsection "D" is thus just a shorthand description, and does not mean

---

[4] Section 101(a)(43)(N) defines "aggravated felony" as "an offense described in paragraph (1)(A) or (2) of section 274(a) [8 U.S.C.A. § 1324(a)] (relating to alien smuggling) . . . ."

that only convictions strictly denominated as "money laundering" convictions are included in the definition.[5]

The second argument is foreclosed by the Supreme Court's decision in Nijhawan v. Holder, 129 S. Ct. 2294, 2302 (2009). In Nijhawan, the Court held that agencies and courts considering whether a conviction is an aggravated felony under INA § 101(a)(43)(M)[6] should apply a "circumstance-specific" approach, rather than a categorical approach, to determine whether the alien's crime involved over $10,000 loss to the victim. In Nijhawan, the alien had stipulated at sentencing that the loss exceeded $100 million. Id. at 2298. The Court held that it was not unfair for the IJ to refer to that sentencing-related material in determining that the conviction was an aggravated felony. Id. at 2303. We see no reason to treat subsection "D" any differently. Section 1956, like the statute referenced in subsection "M," does not have a monetary amount as an element of the crime. Thus, subsection "D" similarly would require the agency or the courts to look to the "specific circumstances surrounding an offender's commission" of the crime in order to determine the amount involved in the crime. See Nijhawan, 129 S. Ct. at 2302.

Further, even consulting only the record of conviction (including the charging document and written plea agreement), it is clear that the "amount of the funds exceeded

---

[5] Further, section 1956 is entitled "Laundering of monetary instruments."

[6] The first subpart of Subsection "M" defines "aggravated felony" as an offense that "involves fraud or deceit in which the loss to the victim of victims exceeds $10,000."

"$10,000."  Ponta-Garcia contested the IJ's finding that he pled guilty to the "Superseding

Indictment" (A.R. 458-66 – including monetary amounts), as opposed to the original

"Indictment" (A.R. 467-74 – no monetary amounts included).  Ponta-Garcia's plea

agreement states that he was pleading guilty to Counts I-III of the "Indictment."  A.R.

361-69.  The BIA found that "the reference to the 'Indictment' in the Judgment [of

conviction] is a reference to the Superseding Indictment, which took the place of the

Indictment before [Ponta-Garcia] pled guilty."  BIA decision at 3.  That finding is logical,

and is further supported by this fact:  the plea agreement states, inter alia, that Ponta-

Garcia "will admit the Sentencing Allegations as stated in the Indictment."  A.R. 361.

The original Indictment does not contain any sentencing allegations, but the Superseding

Indictment contains a list of five numbered paragraphs with the caption, "Sentencing

Allegations."  A.R. 460.  In any event, we do not find that the BIA erred in considering

that the PSR stated that Ponta-Garcia pled guilty "to the three-count Superseding

Indictment."  A.R. 272.

Each Count of the Superseding Indictment clearly shows that amounts exceeding

$10,000 were involved:

> That on or about March 6, 2004, in the District of Rhode Island, the
> defendant, RENATO M. GARCIA, a/k/a Renato Da Costa Ponta-Garcia,
> with the intent to avoid a transaction reporting requirement under Federal
> law, did knowingly and willfully conduct and attempt to conduct a financial
> transaction affecting interstate commerce involving property, to wit:
> $15,000 in United States currency, represented by a person acting at the
> direction of and with the approval of a Federal official authorized to
> investigate violations of 18 U.S.C. § 1956, to be the proceeds of specified

9

unlawful activity, to wit:  the sale and distribution of controlled substances; in violation of 18 U.S.C. § 1956(a)(3)(C).

Count I, A.R. 458.  The remaining two counts contain similar allegations; Count II includes an amount of $15,000, and Count III includes an amount of $17,500.  We thus agree with the BIA that Ponta-Garcia's conviction was for an aggravated felony.

IV.

Finally, Ponta-Garcia argues that his right to due process was violated when: (1) the IJ failed to allow him to testify regarding his understanding of his plea agreement; (2) the amended NTA was not "introduced into the record, and more importantly, was never pled to"; and (3) he was not allowed to testify regarding his belief that he was a permanent resident.  We agree with the BIA and the Government that Ponta-Garcia has not shown that he was prejudiced by any of these purported violations.  Bradley v. Att'y Gen., 603 F.3d 235, 240 (3d Cir. 2010) (successful due process challenge requires showing of substantial prejudice).  As noted, the plea agreement introduced by Ponta-Garcia lends support to the IJ's finding that he pled guilty to the Superseding Indictment. Ponta-Garcia has not explained how his testimony would undermine the finding.  As to his second allegation, we agree that the better practice would have been for the IJ to enter pleadings on the amended NTAs; however, Ponta-Garcia was clearly aware that he was charged with being removable because of his § 1956 conviction, and he contested the allegation that the conviction was an aggravated felony in a brief to the IJ, see A.R. 169-78, as well as in his brief to the BIA, see A.R. 16-21.  The fact that he did not have a

10

chance to specifically say in a hearing that he "denied" the charge did not prejudice him in any way.  As to the third allegation, as Ponta-Garcia's permanent resident status (or lack thereof) was not relevant to removability, he was not prejudiced by not being able to testify about the issue.

For the foregoing reasons, we will deny the petition for review.